UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **United States of America,** | ) | **CASE NO. 5:13 CR 420** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **Benjamin Suarez,** *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendant Michael Giorgio's Motion to Dismiss Counts 1, 2, 3, 4, 5, and 6 of the Superseding Indictment (Doc. 61).  Also pending are a motion to join in the aforementioned motion filed by defendant Benjamin Suarez (Doc. 66)[1] and Defendant Suarez Corporation Industries, Inc.s' Motion to Join Defendant Michael Giorgio's

---

[1]  Although the docket entry indicates that ECF 66 is a motion to join in this motion to dismiss, it appears that the incorrect document was uploaded by counsel.  ECF 66 is captioned as a motion to join "Co-Defendant's Motion to Dismiss Count 9 of the Superceding Indictment."  The Court, however, will treat ECF 66 as a motion to join the request for dismissal of counts 1, 2, 3, 4, 5, and 6.

1

Motion to Dismiss Counts 1, 2, 3, 4, 5, and 6 of the Superseding Indictment (Doc. 73). Defendants are charged with a number of violations of the Federal Election Campaign Act. The motions to join are GRANTED. Therefore, the ruling on the motion to dismiss applies with equal force to all defendants. For the reasons that follow, the motion to dismiss is DENIED.

**FACTS**

For purposes of ruling on defendants' motion, the Court looks to the facts alleged in the indictment in the light most favorable to the government.

The Superseding Indictment charges defendant, Benjamin Suarez, along with co-defendants Michael Giorgio and Suarez Corporation Industries, Inc. ("SCI"), with various counts related to "straw man" campaign contributions made by persons who worked for or were associated with SCI. According to the indictment, Giorgio and Suarez recruited these individuals and requested that they make contributions to federal election campaigns. Girogio and Suarez collected contribution forms and checks from these "straw donors" and sometimes completed the forms themselves. Giorgio and Suarez sent the forms and checks directly to the campaigns. The "straw donors" were told by Giorgio that SCI would reimburse them for their contributions. The "straw donors" were then reimbursed by SCI through payments "disguised" as additional salary and later as profit sharing. Once the contributions were publically exposed, defendants sought to conceal their conduct by attempting to require the "straw donors" to pay back the reimbursements.

Defendants move to dismiss counts one, two, four, five, and six on the grounds that Section 441f of the Federal Election Campaign Act ("FECA") does not criminalize the conduct alleged in these counts. Defendants also argue that dismissal is required with respect to count

2

three because Section 441b of the FECA is unconstitutional on its face and as applied. The government opposes dismissal.

**ANALYSIS**

1. Counts one, two, four, five, and six

Defendants argue that these counts must be dismissed because Section 441f does not prohibit "straw man" or "conduit" contributions. According to defendant, the plain language in the statute proscribes the making of a contribution "in the name of another." Here, however, defendants are not alleged to have directly provided a contribution by using the name of another person. Rather, the contributions were made by individuals in their own names. In response, the government argues that the plain language in Section 441f prohibits the conduct alleged in the superseding indictment.

Upon review, the Court finds that the plain and unambiguous language in Section 441f covers the conduct alleged in the indictment. The statute provides as follows:

> No person shall make a contribution in the name of another person or knowingly permit his name to be used to effect such a contribution, and no person shall knowingly accept a contribution made by one person in the name of another person.

2 U.S.C. § 441f.

Defendants argue that the plain language of Section 441f "prohibits making a contribution by appropriating another's name and submitting the contribution to the candidate using the misappropriated name." According to defendants, reimbursing an individual for making a contribution in his or her own name is "not the same thing." The government argues that the statute does not delineate between particular methods of contributing. According to the government, the statute prohibits both the "false name" contributions described by defendants, as

3

well as the type of "conduit" contributions at issue in this case.  The government also argues that prohibiting "conduit" contributions is consistent with the purpose of the FECA.

Although it does not appear that there is any binding Sixth Circuit precedent, both the Ninth and Seventh Circuits have squarely addressed this issue.  *See, United States v. O'Donnell*, 608 F.3d 546 (9th Cir. 2010); *United States v. Boender*, 649 F.3d 650 (7th Cir. 2011).   In rejecting defendants' current argument, these courts applied basic principles of statutory construction, including the concept that the words contained in a statute "will be interpreted as taking their ordinary, contemporary, common meaning."  *Perrin v. United States*, 444 U.S. 37, 42 (1979).  Both courts determined that the plain and ordinary meaning of the word "contribution" dictates that "straw man" contributions are prohibited by Section 441f:

> We disagree [with defendant's argument], and today we join the Ninth Circuit in holding that §441f unambiguously proscribes straw man, as well as false name, contributions. [Defendant's] textual argument that only the person who actually transmits funds to a campaign makes a contribution flies in the face of the dictionary and ordinary usage of the word 'contribution.'  To 'make a contribution' is of course to 'contribute.'  And to 'contribute' is to 'give to a common supply, fund, etc;' ordinarily, when we speak of someone giving a gift, we consider the giver to be the source of the gift, not any intermediary who simply conveys the gift from the donor to the donee.

*Boender*, 649 F.3d at 660 (internal citations omitted).  *See also, O'Donnell*, 608 F.3d at 550 (same); *United States v. Danielczyk*, 788 F.Supp.2d 472 (E.D. Va. 2011), *rev'd on other grounds* 683 F.3d 611 (4th Cir. 2012)(common meaning of "make" is to "cause something to exist" and the funding of money by the defendant is the conduct that caused the contribution to exist); *United States v. Whittemore*, 2013 WL 5236278 (D. Nev. Sept. 16, 2013)(straw donor contribution violates statute even where defendant had "gifted" the money to the straw donor).

The Court finds the reasoning of these cases persuasive.  The statute plainly prohibits the "making of a contribution" in the name of another.  The Court agrees that the phrase "make a

4

contribution" encompasses situations in which a straw donor remits a contribution with the understanding that the straw donor will not be the ultimate payor.  The "ultimate payors," *i.e.*, defendants, are considered to have "made the contribution" as that phrase is commonly understood.

Defendants also point out that other provisions of the FECA, are directed at "intermediary or conduit" contributions.  For example, Section 441a(8) provides that, "...all contributions made by a person, either directly or indirectly...*including contributions which are...directed through an intermediary or conduit*...shall be treated as contributions from such person...." (Emphasis added).  According to defendants, this language would not be necessary if the phrase "contributions made by a person" already included intermediary or conduit contributions, as those contributions would be prohibited in any event.  Defendants argue that if the Court reads the phrase as urged by the government, then the language contained in Section 441a(8) is superfluous.  In response, the government argues that the language is not superfluous because not all conduit contributions are illegal.  Rather, a conduit contribution does not violate the law provided the donor counts the contribution towards his limit and provides his own name in reporting the contribution.  If these two conditions are satisfied, then a donor could use a conduit who "bundles" contributions without violating the FECA.

Upon review, the Court agrees with the government.  Once again, *O'Donnell* and *Boender* addressed and rejected the very argument defendant now makes:

> [Defendant's] textual comparison to § 441a is inapt.  He correctly identifies what several circuits have called the *Russello* presumption, that when Congress includes certain language in one provision of a statute but excludes it in another, it generally intends the disparate inclusion and exclusion to be meaningful.  But while this is a general presumption, it applies with greater strength in some cases than in others: where the disparate provisions were 'considered simultaneously when the language raising the

5

> implication was inserted,' the Supreme Court has found that the 'negative implications raised by disparate provisions are the strongest.' But the Supreme Court has refused to apply the presumption where the provision including the particular language was enacted several years before the less-specific provision.

*Boender*, 649 F.3d at 660-61. *See also, O'Donnell*, 608 F.3d at 554 (noting that "the *Russello* presumption applies with limited force here because the language used in § 441f is broad rather than specific"). Here, Section 441f was enacted before Section 441a and, as noted by the Court in *O'Donnell*, it is broader in scope. Therefore, the *Russello* presumption need not be applied. The Court further agrees with *Boender* that to accept defendants' position would "undermine the purpose of the statutory scheme of disclosure requirements of which § 441f forms a part by rendering it substantially underinclusive." *Boender*, 649 F.2d at 661. Moreover, as the government accurately notes, the two provisions can, in fact, be read together. Section 441f prohibits only those "conduit" contributions where the "maker" of the contribution reports his own name, but the contribution is otherwise funneled through a conduit. Thus, the Court finds that defendants' argument that Section 441f would render Section 441a(8) superfluous is without merit.

Defendants next urge the Court to review the legislative history and the FECA's enforcement history. According to defendants, the legislative history shows that at least one United States Senator commented during the floor debate that despite the presence of the language contained in Section 441f, a "loophole" existed because a "man of influence" could avoid the provision simply by giving his friends money to contribute to election campaigns. Similarly, defendants note that in at least once instance the FEC declined to follow the recommendation of its general counsel, who recommended an enforcement action under similar circumstances. On the other hand, the government argues that the comments defendants cite

were taken out of context.  The government also argues that the legislative history shows that the provision was designed to prohibit the type of conduit contributions at issue in this case.  The government points out that certain provisions of the Code of Federal Regulations reinforce the government's position.

Upon review, the Court rejects defendants' arguments.  As set forth above, the Court finds that the statutory language at issue is clear and unambiguous.  In so doing, the Court finds that the plain language in the Section 441f prohibits the contributions defendants are alleged to have made.  Because the statute is unambiguous, the Court may not look to legislative history or factors outside of the language itself in resolving the dispute.  *See*, *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 549 (6th Cir.1999)("When interpreting a statute, we must begin with its plain language, and may resort to a review of congressional intent or legislative history only when the language of the statute is not clear.").

For these same reasons, the Court rejects defendants' due process challenge.  Defendants in essence argue that the Court should apply the rule of lenity, which requires that a Court construe vague laws in favor of the defendants.  According to defendants, the language is ambiguous and must be construed in favor of the defendants because a district court in the Ninth Circuit accepted defendants' argument.  According to defendants, this demonstrates that more than one reasonable interpretation of the statute is possible, rendering the statute ambiguous.  Yet, the Ninth Circuit expressly rejected the district court's conclusion regarding the meaning of the statute.  Although obviously fully versed in the reasoning of the district court, the Ninth Circuit nonetheless found the statute to be *unambiguous*.  In so finding, the Ninth Circuit implicitly rejected the argument defendants now make.  Moreover, the "rule of lenity" does not

apply in this case because the Court finds the statutory language to be clear and unambiguous:

> Defendants insist that this court apply the rule of lenity in construing 18 U.S.C. § 1961(1). We have no occasion to do so because the rule "only serves as an aid for resolving an ambiguity; it is not to be used to beget one." *Callanan v. United States*, 364 U.S. 587, 596, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961). Thus, the rule of lenity "comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." *Id*. Where there is no ambiguity, as is the case here, "the rule of lenity does not come into play." *Turkette*, 452 U.S. at 587 n. 10, 101 S.Ct. 2524.

*U.S. v. Adams*, 722 F.3d 788, n.8 (6th Cir. 2013).

Because there is no ambiguity in Section 441f, the Court will not apply the rule of lenity and due process is not offended.

Based on the foregoing, the Court finds that Section 441f of the FECA extends to the "conduit" or "straw-man" contributions at issue in the indictment.

    2. Count three

        A.  *Citizens United*

In count three, the government alleges that defendants violated Section 441b's prohibition on corporate contributions.  The statute provides in relevant part, "It is unlawful for...any corporation...to make a contribution or expenditure in connection with any election to any political office...."  2 U.S.C. § 441b.  Defendants argue that in the wake of the Supreme Court's decision in *Citizens United v. Federal Election Commission*, 130 S.Ct. 876 (2010), the statute is unconstitutional.  The government disagrees.

Prior to *Citizens United*, the Supreme Court upheld a direct restriction on corporate independent expenditures of funds for political speech.  *See, Austin v. Michigan Chamber of Commerce*, 494 U.S. 652 (1990), *overruled by Citizens United v. Federal Election Commission*, 130 S.Ct. 876 (2010).  In *Austin*, the Court determined that the government's interest in

8

preventing the "antidistortion" of political speech that arises with the "immense aggregations of wealth that are accumulated with the help of the corporate form...." justified a ban on corporate expenditures involving political speech. *Austin*, 494 U.S. at 660. As such, the restriction did not violate the First Amendment. In *Citizens United*, the Court revisited this issue. The Court first noted that *Buckley* and *Belotti*, two cases decided prior to *Austin*, prohibited "restrictions on political speech based on the speaker's corporate identity." Accordingly, the Court "was confronted with conflicting lines of precedent: a pre-*Austin* line that forbids restrictions on political speech based on the speaker's corporate identity and a post-*Austin* line that permits them." *Citizens United*, 558 U.S. at 348.

In overruling *Austin*, *Citizens United* outright rejected the antidistortion rule espoused in *Austin*. The Court determined that "[i]f the antidistortion rationale were to be accepted...it would permit [the] Government to ban political speech simply because the speaker is an association that has taken on the corporate form." Because this rationale "interferes with the 'open marketplace' of ideas protected by the First Amendment" and "permits the government to ban the political speech of millions of associations of citizens," it does not withstand constitutional scrutiny. Therefore, the Court expressly overruled *Austin*:

> Due consideration leads to this conclusion: *Austin* should be and now is overruled. We return to the principle established in *Buckley* and *Bellotti* that the Government may not suppress political speech on the basis of the speaker's corporate identity. No sufficient governmental interest justifies limits on the political speech of nonprofit or for-profit corporations.

*Citizens United*, 558 U.S. at 365. And, as a result, "Section 441b's restrictions on corporate independent expenditures are therefore invalid and cannot be applied...." *Id*.

Defendants argue that after *Citizens United*, Section 441b's ban on direct *contributions*

9

from corporations is unconstitutional. According to defendants, although *Citizens United* involved expenditures, the rationale clearly provides that no distinction can be made between an individual and a corporate donor for First Amendment purposes. As such, Congress cannot ban all corporate contributions to political candidates. The government argues that *Federal Election Commission v. Beaumont*, 539 U.S. 146 (2003) is still "good law" and that this Court is bound to apply it to this case.

Upon review, defendants' argument is rejected. In *Beaumont*, the Supreme Court addressed whether Section 441b's ban on direct political contributions passed constitutional muster as applied to non-profit corporations. In upholding the statute, the Court noted that political contributions are "more clearly justified by a link to political corruption" and, therefore, Congress may place stricter regulations on political contributions as compared to corporate expenditures. As the Fourth Circuit recently noted:

> Direct contribution limitations...require the "lesser demand of being closely drawn to match a sufficiently important interest." *Beaumont*, 539 U.S. at 162. The reason for this difference in scrutiny is clear: independent expenditures, by definition, are direct means by which political speech enters into the marketplace. [D]irect contributions, conversely, do not necessarily fund political speech but must be transformed into speech by an individual other than the contributor.

*United States v. Danielczyk*, 683 F.3d 611 (4th Cir. 2012)(some internal citations omitted).

According to defendants, *Citizens United* calls into doubt the continued validity of *Beaumont*. Defendants argue that the Supreme Court's broad language in *Citizens United* indicates that courts cannot treat corporate speakers less favorably than individual citizens. Therefore, section 441b's complete ban on corporate contributions violates the First Amendment. Moreover, the Court in *Beaumont* relied on *Austin*, which *Citizens United* expressly overruled. Therefore, the holding in *Beaumont* is fatally flawed.

10

As an initial matter, defendants' argument wholly ignores the distinction between direct contributions and corporate expenditures. While *Citizens United*'s holding is clear, defendants ignore the fact that historically the Supreme Court has recognized that regulation of corporate expenditures is subject to a higher level of scrutiny as compared to political contributions. Because *Citizens United* involved the regulation of corporate expenditures, the Court cannot say that *Citizens United* controls the outcome here. This is especially so in that *Beaumont* involved direct contributions and is, therefore, directly on point.[2] As defendants concede, a lower court is not permitted to find that the Supreme Court implicitly overruled itself. *See, Agostini v. Felton*, 521 U.S. 203 (1997)(We reaffirm that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). Because *Citizens United* did not expressly overrule *Beaumont*, and because *Beaumont* controls the outcome in this case, defendants' argument is rejected. Based on the continuing validity of *Beaumont*, this Court is required to find that Section 441b as it relates to corporate contributions is a constitutional exercise of Congress's authority. *See also*,

---

[2] Defendants invite the Court to distinguish *Beaumont* on the grounds that it involved a non-profit corporation. This distinction is without merit. *Beaumont* determined that Section 441b is constitutional as it relates to non-profit corporations. There, defendants argued that unlike for-profit corporations, non-profit corporations posed no risk of "unfair deployment of wealth for political purposes." It would be nonsensical to decline to follow *Beaumont* on the grounds that the defendant in this case is a for-profit corporation. It would lead to the absurd result that non-profit corporations (which undoubtedly must follow *Beaumont)* are prohibited from making political contributions, while their for-profit counterparts may do so.

*Danielczyk*, 683 F.3d 611 (concluding that corporate contributions can be subjected to different regulations than corporate expenditures and finding that the *Agostini* principle prevents lower courts from concluding that the Supreme Court implicitly overruled itself).

### B.  Overbreadth

Defendants argue that in light of *Citizens United*, Section 441b is unconstitutionally overbroad.  According to defendants, the statute defines contributions broadly and is not limited to contributions made directly to candidates.  Rather, the statute defines contribution as "any gift...of money or anything of value made by any person for the purpose of influencing any election for Federal office."  As such, the statute criminalizes a "very substantial" portion of constitutionally protected speech.  In other words, the ban is not limited to direct contributions to candidates.  Rather, according to defendants, it extends to prohibit "any and all political donations by corporations in connection with federal elections–including, apparently, donations to pay the costs of candidate forums and debates, voter registration drives, and get-out-the-vote efforts."

In response, the government argues that the statute is not unconstitutionally overbroad because *Beaumont* is still valid law and, therefore, Congress may prohibit "contributions" under Section 441b.  The government further argues that contributions involve less First Amendment protection because the "expressive function of contributions rests solely on the undifferentiated, symbolic act of contributing."  Since the candidate, not the donor, determines the nature of the political expression, the "content of the contributor's political speech is sharply mediated."  The government points out that corporations are allowed to establish and subsidize Political Action Committees and provide these funds directly to candidates.  In addition, the government notes

12

that after *Citizens United*, corporations are permitted to spend directly on electoral advocacy. The government points out that defendants are incorrect that Section 441b prohibits all forms of political donations.  According to the government, FEC regulations explicitly allow corporations to fund candidate debates, get-out-the vote efforts, and voter registration drives.

Upon review, the Court rejects defendants' argument that the statute is facially invalid. Although the *Citizens United* addressed a facial attack to Section 441b, the Court held that it was addressing "*Citizens United*'s challenge to *Austin* and the facial validity of § 441b's *expenditure* ban." *Citizens United*, 558 U.S. at 330 (Emphasis added).  As set forth above, *Citizens United* left untouched *Beaumont*'s holding that Congressional prohibitions on corporation *contributions* are permissible.  Although *Beaumont* involved an as-applied challenge, its reasoning extends to all corporate contributions.  In light of the fact that *Citizens United* expressly addressed limits on corporation expenditures only, defendants fail to convince the Court that the statute's ban on contributions "would chill a substantial amount of activity protected by the First Amendment." *Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013).  This is especially so because the government points out that some of the speech defendants claim is prohibited, is expressly *permitted* under the regulations.  *See, e.g.*, 11 C.F.R. 100.81.  On the whole, defendants do not develop a record or otherwise point to any particular speech, let alone a "substantial" amount of protected speech that is chilled by Section 441b's prohibition on corporate contributions.  As such, defendants' facial attack fails.

### **CONCLUSION**

For the foregoing reasons, Defendant Michael Giorgio's Motion to Dismiss Counts 1, 2, 3, 4, 5, and 6 of the Superseding Indictment (Doc. 61) is DENIED.

IT IS SO ORDERED.


                        /s/ Patricia A. Gaughan
                        PATRICIA A. GAUGHAN
                        United States District Judge

Dated: 5/8/14