**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **United States of America,** | ) | **CASE NO. 5:13 CR 420** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Benjamin Suarez,** *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon the Motion of Benjamin Suarez to Suppress Documents That Barbara Housos and Her Counsel Provided to the Government and to Require the Government to Return the Documents (Doc. 47).  Defendant Michael Giorgio moves to join in the motion (Doc. 62), as does defendant Suarez Corporation Industries, Inc. (Doc. 76).  The motions to join are GRANTED and, therefore, the substantive ruling on the motion to suppress will apply with equal force to all defendants.  Also pending is the Motion of Benjamin Suarez to Strike Allegations Regarding Privileged Documents (Doc. 52).  For the reasons that follow, the

1

motions to suppress and strike are DENIED.

**FACTS**

Only those facts necessary for a resolution of the instant motions are set forth herein.

Defendants are charged with various counts under the Federal Election Campaign Act ("FECA") and are further charged with obstruction of justice based, generally speaking, on the alleged failure to comply with grand jury subpoenas. Defendant Suarez is also charged with obstruction of justice based on witness intimidation.

Defendants move to suppress two "categories" of documents. The first category consists of a five-page typewritten narrative apparently prepared by defendant Suarez. This typewritten narrative appears to have been delivered to defendant Giorgio, as well as Barabra Housos, SCI's controller. Each received the narrative with a personalized handwritten note attached. It appears that the handwritten notes were also prepared by Suarez. The second category of documents are the "Guthrie documents." The "Guthrie documents" consist of an email from Scott Guthrie, an employee working in Josh Mandel's office, to defendant Suarez discussing a $30,000 contribution, as well as a fax cover sheet. The documents also contain handwritten notations. In addition to these two categories, defendants argue that a particular email sent from SCI corporate counsel to Suarez's assistant is protected by the attorney-client privilege and should be stricken from the superseding indictment.

Defendants move to suppress the documents and to strike allegations regarding the first category of documents from the superseding indictment. The government opposes the motion. Each category of documents and the email will be addressed in turn.

**ANALYSIS**

1. The narrative and handwritten documents[1]

Defendants move to suppress the use of these documents on the grounds that the documents are covered by the attorney-client privilege and work product doctrine.

It appears that a driver for Suarez delivered the documents to Housos at home during the summer of 2012, during a time when Housos was recovering from surgery.  At this point, Housos had been advised that she would be subpoenaed to testify before the grand jury.  Other SCI employees, as well as family members of Suarez had either been subpoenaed to testify or already testified.  The handwritten note is as follows:

> Barb,
>
> I want to spare you doing a grand jury testimony in your condition.  I want to see if you can do an affidavit like Donna.
>
> Mike P. can draft it from the attached brief to the new attorneys.  Just look at your parts in the brief and tell me if it is accurate.  This brief is my memory of what happened.  If accurate, just write OK on it.  If you have corrections make notes.  Return to me in this envelope and give to Joe to bring back to me.
>
> Do not tell anyone about this.  Also, the new attorneys said no one should admit to wrongdoing even with a letter of immunity.  That's a lie.  They will still prosecute you as a co-conspirator.  Also, do not admit to anything you think might be wrongdoing to the attorneys.  They could turn you in. Your testimony is key to keeping Mike G. from getting indicted which would take down SCI.  Do not call me on this as our lines may be tapped.

Attached to the handwritten note is the five-page type written narrative.  At the top of the page is the notation "Attorney Client Privilege Work Product."  The document also provides that

---

[1] Although defendants move to suppress these documents, defendants point to no constitutional violation arising from the search warrant and subsequent search itself.  Rather, it appears that defendants seek an evidentiary ruling regarding the admissibility of these documents.  Accordingly, the Court will treat defendants' motion as such.

it is a "briefing for new attorneys." Page one of the document describes SCI as a corporate entity. The remainder of the document appears to disclose events related to the contributions. According to the document, Suarez was contacted by Jim Rennaci and Josh Mandel about raising funds in a short time period. Suarez contacted Giorgio to "ask him if he would ask the top earning executives to contribute." The narrative details in essence that Suarez really didn't know what Giorgio was doing with regard to the contributions. For example, Suarez writes, "After the Blade story, Suarez called Girogio and asked him if he had set up the loans for the contributors. Girogio said 'no,' that he handled it another way. He would not tell Suarez what he did." The narrative further states that "in the fall of 2011, most of the contributors had paid back profits sharing advance and all of them it [sic] paid back by end of winter 2012." The narrative discusses legal advice Suarez sought from a law firm regarding the legality of the contributions. It further indicates that the contributions were set up as profit sharing and that "Barb Housos...keeps a side written hand log of who owes profit sharing advances."

It appears that Housos provided her copy of these documents to her attorney, Bradley Barbin. Because Barbin was unsure whether the documents were privileged, he provided them to a designated filter attorney in the United States Attorney's Office. The filter attorney then applied to Chief Judge Oliver for an *ex parte* order allowing the government to use the documents during the course of its grand jury investigation. The government argued to Judge Oliver that the documents are not covered by the attorney-client privilege and that even if the privilege applies, the crime-fraud exception negates any such applicability. Judge Oliver accepted the government's argument and in a short order determined that "communications between Benjamin Suarez and Barbara Housos relating to the information she may provide to the

4

government and possible testimony under a grant of immunity are not protected under the attorney-client privilege on the basis that the crime-fraud exception applies to those communications."

The government seized Giorgio's version of the document from Giorgio's office after executing a search warrant directed at SCI.[2] The handwritten note attached to Giorgio's version provides as follows:

Mike,

This is my memory of what happened. If this is accurate, send back as OK or make corrections. Do not call me...lines may be tapped.

The same five-page typewritten document is attached to Girogio's note. In this document, however, Giorgio made handwritten changes, including a change to the profit-sharing section. Giorgio edited the document to state, "Therefore, Suarez suggested to Giorgio that he offer the people profit sharing early because we will have profit sharing later in the year. Anyhow, unfortunately, at the time [of] the communication my intent was not made clear to Giorgio. My intent was to advance the profit sharing to those individuals who would want to donate..." In addition, Giorgio edited Suarez's statement that "After the Blade story, Suarez called Girogio and asked him if he had set up the loans for the contributors. Girogio said 'no,' that he handled it another way. He would not tell Suarez what he did." Giorgio crossed out the entire sentence and wrote "never any conversation as to advance loans." Similarly, while Suarez recounted a conversation he purportedly had with Giorgio after FBI agents interviewed the contributors, Giorgio again crossed out the sentence and wrote, "conversation never took place."

---

[2] It also appears that the government obtained a copy of Housos's version after executing a search warrant.

At the time these documents were shared, Suarez, Giorgio, and Housos were parties to a joint defense agreement ("JDA").  The JDA allows information to be shared between SCI, Suarez, Giorgio, and Housos and their respective attorneys while protecting the confidentiality of materials and without waiving privilege.  Sometime thereafter, it appears that Housos formally withdrew from the agreement.  The duties to maintain confidentiality, however, continue after withdrawal.

Defendants argue that the documents are protected by the attorney-client privilege. According to defendants, the five-page typewritten narrative was provided to all counsel who were parties to the JDA.  Defendants claim that Suarez prepared the document for the purposes of facilitating the collection of information for SCI's newly retained counsel.  Defendants argue that the handwritten note sent to Housos contains confidential legal advice that Suarez obtained from his attorneys.  Namely, Suarez informs Housos that she was receiving inaccurate legal advice and that she may be able to avoid testifying before the grand jury by providing an affidavit instead.  Defendants argue that because Housos and her attorney signed the JDA, they were prohibited from disclosing this document to the government.  SCI's former in-house counsel avers that Suarez provided the narrative to at least three of the counsel that signed the JDA.

Defendants also argue that the documents are protected from disclosure by the work product doctrine.  According to defendants, Suarez prepared the documents in anticipation of litigation and to assist new counsel in becoming familiar with the facts of the case.  In addition, the typewritten document contains the mental impressions of Suarez's legal counsel.  For example, Suarez indicates that counsel stated that the laws surrounding the ability to reimburse

6

employees were esoteric and difficult and that Suarez received inaccurate advice from the law firm. It further provides that attorney John McCaffery recommended setting up a legal defense team. According to defendants, this information is covered by the work product doctrine.

The government claims that the document belies any argument that it contains confidential legal advice from Suarez's counsel to Suarez. According to the government, on its face the handwritten document is clear evidence that Suarez intended to intimidate Housos into adopting his version of the "facts." Moreover, Suarez acknowledges that it is his "memory of what happened." According to the government, the documents are filled with falsehoods. For example, the government points out that the summary provides as follows, "since profit sharing is not paid off of the general ledger account, Barb Housos...keeps a side written hand log of who owes profit sharing advances." The government claims that no such log was ever produced in response to the grand jury subpoenas issued to SCI because no such log exists. As such, the document does not contain "legal advice" and, instead, is itself evidence of obstruction of justice. Thus, even if the attorney-client privilege somehow applied, the crime-fraud exception negates application of the privilege. According to the government, the issue of attorney-client privilege and the crime-fraud exception were previously decided by Judge Oliver and the rulings are the "law of the case."

The government also argues that the JDA does not govern the issues at hand. The government has not been provided with a copy of the JDA. According to the government, the typewritten document was not provided to Housos's prior counsel. The government also argues that when these issues were raised with the government in 2012, Suarez and SCI complained only that the typewritten document was privileged. Neither alleged that the handwritten note

7

was covered by the attorney-client privilege.  The government further argues that the JDA cannot create a privilege where none exists.  Thus, the fact that witnesses collaborated to create a joint recollection does not create a privileged document simply because the witnesses are parties to a  joint defense agreement.

In reply, defendants argue that the law of the case doctrine does not apply because this is not the same proceeding as the one in which Judge Oliver issued the order.  In addition, the order was issued on an *ex parte* basis.  As such, the "parties" were not the same and it would be improper to bind defendants to the ruling when they did not have an opportunity to present any argument in opposition.  Defendants further argue that the "crime fraud" exception does not apply.  According to defendants, Suarez prepared the documents for lawful purposes, specifically to assist counsel in gathering relevant facts.  On the face of the document, Suarez describes the document as his recollection of events and requests that Giorgio and Housos make any changes to the document if their recollections are different.  Giorgio, in fact, made changes to the document and in two places indicated a direct contradiction to Suarez's version of events.  Defendants argue that had Suarez intended to intimidate Housos, he could have simply instructed her to adopt his version of the facts.  There is simply no indication that Suarez was trying to convince Housos to adopt a false version of events.

As an initial matter, the Court agrees with defendants that Judge Oliver's *ex parte* order is not "law of the case."  Defendants correctly point out that the *ex parte* order was issued in a different proceeding–a proceeding to which the defendants were not parties.

Pursuant to the "law of the case" doctrine, "findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation."  *Rouse v.*

8

*DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6 th Cir. 2002)(citations omitted). Circuit courts review a lower court's application of the law-of-the case doctrine for an abuse of discretion. *Id*.

> The law of the case doctrine is not an inexorable command, and courts must use 'common sense' in applying it. Accordingly, the law of the case doctrine is discretionary when applied to a coordinate court or the same court's own decisions. Nevertheless, a court's power to reach a result inconsistent with a prior decision reached in the same case is to be exercised very sparingly, and only under extraordinary conditions.

*Bench Billboard Co. v. City of Covington*, 2013 WL 5942230 (6th Cir. Nov. 1, 2013)(internal quotations and citations omitted). This doctrine applies to cases involving the same parties. *See, e.g.*, *Id*. at n. 11 ("law-of-the-case doctrine applies here because this is a successive appeal in the same case between the same parties"). The law of the case doctrine does not apply to orders issued on an *ex parte* basis because the complaining party did not have an opportunity to be heard. *See, Munro v. Post,* 102 F.2d 686, 688 (2nd Cir.1939)( "The 'law of the case' in the latter sense requires that the order of the first judge, *unless merely a formal or an ex parte order*, shall not be vacated or nullified by a later judge of the same court."). *See also*, *United States. v. Pineda-Mendoza*, 2012 WL 4056829 (E.D. Cal. Sept. 14, 2012)("It is generally unfair to preclude a party from later arguing an otherwise legitimate objection when that party has not had any opportunity to initially voice the objection."). Nor does the doctrine apply to preliminary orders. *See, e.g., Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, n.8 (1st Cir. 2006)(noting that "law of the case" doctrine does not apply to *ex parte* preliminary order).

Here, Judge Oliver issued a preliminary order on an *ex parte* basis allowing the government to utilize the written narrative and handwritten notations in connection with the grand jury investigation. Defendants were not parties to that proceeding, which bore a different case name and number than this proceeding. The Court finds that the law of the case doctrine

9

does not apply because defendants were not parties to that different proceeding and did not have an opportunity to present any argument regarding the issue. Accordingly, the Court rejects the government's argument that the law of the case doctrine prevents this Court from reconsidering Judge Oliver's ruling.

The Court now turns to whether the documents are protected by the attorney-client privilege. As the Supreme Court has noted:

> We readily acknowledge the importance of the attorney-client privilege, which is one of the oldest recognized privileges for confidential communications. By assuring confidentiality, the privilege encourages clients to make "full and frank" disclosures to their attorneys, who are then better able to provide candid advice and effective representation. This, in turn, serves broader public interests in the observance of law and administration of justice.

*Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 108 (2009)(citations and quotations omitted). "Generally, the attorney-client privilege extends to confidential disclosures by a client to an attorney made in order to obtain legal assistance." *U.S. v. Moss*, 9 F.3d 543 (6th Cir. 1993). The burden of establishing that the privilege exists is on the person asserting it. *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983).

> "[T]he work product doctrine 'is distinct from and broader than the attorney-client privilege.'" *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir.1986) *(quoting United States v. Nobles*, 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)). While the attorney-client privilege protects only confidential communications, the work product doctrine generally protects from disclosure documents prepared by or for an attorney in anticipation of litigation. *Id*.; *see also Hickman v. Taylor*, 329 U.S. 495, 510-12, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

*Regional Airport Authority of Louisville v. LFG, LLC*, 460 F.3d 697, 713 (6th Cir. 2006).

As a general rule, disclosure of otherwise privileged material to a third-party acts as a waiver of the attorney-client privilege. "A joint defense extension of the attorney-client privilege has been applied to confidential communications shared between co-defendants which

are part of an on-going and joint effort to set up a common defense strategy." *Moss*, 9 F.3d at 550 (citations and quotations omitted).  This extension is sometimes referred to as the "joint defense privilege," the "common interest privilege," or the "community of interest privilege." "The common interest privilege...is not an independent privilege, but an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to third parties, and assumes the existence of an underlying privilege." *Falana v. Kent State University*, 2012 WL 6084630 (N.D. Ohio Dec. 6, 2012). "...[A]s an exception to waiver, the joint defense or common interest rule presupposes the existence of an otherwise valid privilege, and the rule applies not only to communications subject to the attorney-client privilege, but also to communications protected by the work-product doctrine." *In re Grand Jury Subpoenas*, 902 F.2d 244 (4th Cir. 1990).  Although the Sixth Circuit[3] does not appear to have directly adopted the requirements of the common interest doctrine, other circuit courts have done so.  *See*, *American Management Services, LLC v. Department of the Army*, 703 F.3d 724 (4th Cir. 2013)("The common interest doctrine permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims."); *United States v. Gonzalez*, 669 F.3d 974 (9th Cir. 2012)(noting that the district court's ruling "conflicts with a number of this circuit's precedents establishing that the joint defense privilege is an extension of the attorney-client privilege, and does establish a duty of confidentiality on the part of the additional attorney and party to the agreement").

---

   [3]   In *United States v. Parenteau*, 529 Fed.Appx. 532 (6th Cir. June 27, 2013), the Sixth Circuit cited *In re Teleglobe Communications Corp.*, 493 F.3d 345 (3rd Cir. 2007) with approval.  In *Teleglobe* the Third Circuit applied a Delaware evidentiary rule directed at the community of interest privilege.

11

> Recognizing the inherent tension between the beneficial goals of the attorney-client privilege and the courts' right to every person's evidence, the courts have articulated the following principles to inform our analysis of the scope of the common interest doctrine:
>
> (1) Courts construe the privilege to apply only where necessary to achieve its purpose.
>
> (2) Only those communications which reflect the lawyer's thinking or are made for the purpose of eliciting the lawyer's professional advice or other legal assistance fall within the privilege.
> (3) Because one of the objectives of the privilege is assisting clients in conforming their conduct to the law, litigation need not be pending for the communication to be made in connection to the provision of legal services.
>
> (4) Because the privilege is in derogation of the search for truth, any exceptions to the requirements of the attorney-client privilege must be strictly confined.

*United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007)(citations and quotations omitted).  "...[T]he common interest doctrine only will apply where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is limited strictly to those communications made to further an ongoing enterprise."  *Id*. at 856-57 (citation omitted).

Upon review, the Court finds that the handwritten notes sent by Suarez to Giorgio and Housos are not protected by the attorney-client privilege or work product doctrine.  Therefore, neither the "joint defense privilege" nor the "common interest doctrine" applies because those doctrines do not extend the scope of the attorney-client privilege.  Neither note was prepared "by or for an attorney in anticipation of litigation."  Therefore, the work product doctrine does not apply.  Nor has Suarez established that the handwritten notes are protected by the attorney-client privilege.  As an initial matter, the handwritten note to Giorgio conveys no legal advice and does not represent a communication between an attorney and a client.  Moreover, Suarez fails to establish that an attorney actually provided the legal advice contained in the note to Housos.  In that note, Suarez indicates that he was informed that the government will prosecute Housos as a

12

co-conspirator even if she receives a letter of immunity.  He further instructs her not to report wrongdoing to her attorney because they could turn her in.  There is simply no evidence that any such advice was actually provided by an attorney.  Thus, even assuming the joint defense privilege protects the sharing of legal advice among co-defendants, the privilege does not extend to Suarez's handwritten note to Housos.

Assuming *arguendo* that the joint defense privilege extends the work product doctrine or the attorney-client privilege to cover the sharing of the five-page typed narrative among Suarez, Giorgio, and Housos, the Court finds that the crime-fraud exception defeats any applicable privilege.[4]

The Sixth Circuit has articulated a two-part test for applying the crime-fraud exception: "First, the government must make a prima facie showing that a sufficiently serious crime or fraud occurred to defeat the privilege; second, the government must establish some relationship between the communication at issue and the prima facie violation." *United States v. Collis*, 128 F.3d 313, 321 (6th Cir. 1997)(*quoting In re Antitrust Grand Jury*, 805 F.2d 155, 164 (6th Cir. 1986)(applying the two-part test in a criminal proceeding)). "The evidentiary burden for making this *prima facie* showing is the same as that for demonstrating probable cause–such that 'a prudent person [would] have a reasonable basis to suspect the perpetration of a crime or fraud.'"

---

[4] The Court finds that the version of the narrative containing Giorgio's handwritten notations is not covered by the work product doctrine or the attorney-client privilege.  Although Suarez provided an affidavit from an attorney indicating that Suarez's version was provided to a number of attorneys in July of 2012, Giorgio provided no such affidavit.  There is simply no indication that this version was provided to any attorney for the purpose of litigation or to secure legal advice.  Therefore, the attorney-client (or joint defense) privilege does not extend to cover the version containing Giorgio's handwritten corrections.

*United States v. Clem*, 210 F.3d 373 (6th Cir. 2000) (*quoting In re Antitrust Grand Jury*, 805 F.2d 155, 164–65 (6th Cir. 1986)). The relevant criminal intent is that of the client, and the intended crime or fraud need not actually occur for the exception to apply. *See Collis*, 128 F.3d at 321.

Here, the government argues that Suarez circulated the narrative, which contains materially false statements about the manner in which the contributions were reimbursed. Suarez indicates that from the beginning any donation made and reimbursed by SCI would have to be paid back to SCI through profit sharing.  This statement is directly contradicted by Toth's grand jury testimony, in which he indicates that he was asked to make campaign donations and that the donation would be reimbursed.  He indicated that he was not informed that he would have to repay the reimbursement.  The narrative was sent to Housos along with the handwritten note that indicates that, regardless of whether immunity is offered by the government, Housos will nonetheless be prosecuted.  Suarez further indicates that her testimony is key to keeping Giorgio from being indicted, which would "bring down" SCI.  The court finds that a prudent person would have reasonable cause to believe that Suarez sent Housos the false document in an effort to persuade her to adopt his version of the facts in her grand jury testimony in order to avoid "bringing down" SCI and causing Giorgio's indictment.  Accordingly, the Court finds that the crime-fraud exception vitiates any attorney-client privilege that may otherwise protect the document from disclosure.[5]

---

[5] The Court finds that probable cause exists to support the application of the crime-fraud exception.  The Court provided defendants with an opportunity to be heard on this issue and, in fact, defendants provided some evidentiary support in the context of the pre-trial briefing.  As such, the Court finds that an *oral* hearing is not required.

2. The Guthrie documents

Defendant Suarez moves to suppress the Guthrie documents.  The Guthrie documents consist of an email from Scott Guthrie, an employee working in Josh Mandel's office, to defendant Suarez discussing a $30,000 contribution, as well as a fax cover sheet.  The documents also contain handwritten notations. According to defendant, these documents were illegally seized without a search warrant.  By separate Order, the Court concluded that probable cause exists to support the search of SCI's premises.  Because the originals of the Guthrie documents were obtained pursuant to a lawful search of the premises, the Court finds that it need not address whether the copies obtained by Housos through her attorney were illegally obtained.

3. The email from SCI's counsel to Suarez's assistant

Defendants move to strike an email sent from SCI's in-house counsel to Suarez's assistant.  The email was seized during the execution of a search warrant.  The document is referenced in paragraph 85 of the superseding indictment.  It is an email from Michael R. Puterbaugh, in-house counsel, to Suarez's assistant.  The email indicates as follows:

Ben would like a copy of the Josh Mandel letter to go:

Husted

Portman

Renacci

DeWine

Kasich

Thanks.

On the email, Renacci's name is circled and a handwritten notation provides, "all sent

15

UPS next day except [the circled name] 5/20/11; Renacci sent 5/24."

Defendants argue that the email is a privileged communication. According to defendants, the email contains the mental impressions of an attorney. Defendants offer the affidavit of Mike Puterbaugh, SCI's then corporate counsel and the author of the email. Puterbaugh avers that the document recounts Suarez's decision as to which Ohio elected officials should receive the letter. According to Puterbaugh, the decision was made – and reflects– Suarez's confidential legal communications over many months with counsel. Defendant Suarez argues that Puterbaugh provided him with legal advice. Therefore, he has standing to move to strike Paragraph 85 on the basis that the email is privileged.

The government argues that this email contains simple instructions to Suarez's assistant to mail copies of a letter. The government further claims that simple ministerial functions are not communications covered by the attorney-client privilege. In addition, the government argues that the privilege, to the extent it covers this email, belongs to SCI, not Suarez. SCI did not move to strike this allegation from the complaint. Suarez, the only moving defendant, lacks standing to claim that this document is privileged.

Upon review, the Court finds that the email at issue is not covered by the attorney-client privilege. As set forth above, the attorney-client privilege protects from "confidential disclosures by a client to an attorney made in order to obtain legal assistance." Here, the email is a ministerial instruction to an assistant to send letters to certain individuals. The document does not divulge any legal advice. As such, it is not privileged and defendants' request to strike the allegations from the indictment is rejected.

16

**CONCLUSION**

For the foregoing reasons, the Motion of Benjamin Suarez to Suppress Documents That Barbara Housos and Her Counsel Provided to the Government and to Require the Government to Return the Documents (Doc. 47) is DENIED. The Motion of Benjamin Suarez to Strike Allegations Regarding Privileged Documents (Doc. 52) is also DENIED.

IT IS SO ORDERED.

                                        /s/ Patricia A. Gaughan
                                        PATRICIA A. GAUGHAN
                                        United States District Judge

Dated: 5/8/14