**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **United States of America,** | ) | **CASE NO. 5:13 CR 420** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **Benjamin Suarez, *et al.*,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

**INTRODUCTION**

This matter is before the Court upon the Motion of Benjamin Suarez to Suppress

Evidence Seized on January 22, 2013 (Doc. 46).  Defendant Suarez Corporation Industries, Inc.

("SCI") moves to join in defendant Suarez's motion to suppress (Doc. 78).  The motion to join is

GRANTED and the substantive ruling on the Suarez motion to suppress will apply equally to

SCI.  Also pending is Defendant Michael Giorgio's Motion to Suppress (Doc. 63).  Defendant

Benjamin Suarez moves to join in defendant Giorgio's motion (Doc. 65).  Again, the motion to

join is granted and the substantive ruling on defendant Giorgio's motion will apply with equal

force to defendant Suarez.  For the reasons that follow, the motions to suppress are DENIED.

1

**FACTS**

Only those facts necessary for a resolution of the instant motions are set forth herein.  On January 17, 2013, the government applied for a search warrant to search the premises of Suarez Corporation Industries, Inc. ("SCI").  In particular, the warrant sought to search the following locations:

A.  The individual office spaces and any other areas used or maintained for storing records (including hard copy records, stand-alone computers, and any other electronic storage media) associated with the following individuals: Donna Blubaugh; Michael Collins; Eugene Cook; Sharon Suarez; Timothy Ditty; Michele Ditty; Antonia Fernandez; Michael Giorgio; Douglas Heck; Barbara Housos; Paul Klingaman; Michael Lawrence; Sherri Peters-Litten; Michael Schumacher; Julius Toth; John Whitacre (deceased); Benjamin Suarez; Nancy Suarez; Angelina Jones; Nancy Workman, and any secretarial staff who support the foregoing individuals.  The office of the General Counsel for SCI will not be searched.

B.  The areas in which computer servers and other related digital storage devices used by or associated with SCI are located.

The government sought to seize the following items:

1.  All records...that reflect or pertain to political campaign-related donations, requests or solicitations for such donations, reimbursements of such donations, or deductions from compensation related to donation reimbursements.

2.  All records...that reflect or pertain to contacts with elected officials, campaign workers, or other public office or campaign staff in any way relating to the group of California District Attorneys' lawsuit against SCI.

3.  All records...that reflect or pertain to contacts with elected officials, campaign workers, or other public office or campaign staff for Congressman Jim Renacci or U.S. Senate candidate Josh Mandel.

4.  All records...that reflect or relate to an attempt to influence...an investigation or official proceeding involving campaign donations, related reimbursements, deductions from compensation, or the lawsuit by the group of California District Attorneys against SCI.

5.  The local stand-alone computer (or a comparable image of such) assigned to Barbara Housos, to search for any record described in paragraphs 1 through 4 above.

2

6.  The server...containing the user account of Barbara Housos, as well as other network areas and digital storage devices accessible to her, to search for any record described in paragraphs 1 through 4 above.

7.  The server...containing the email accounts of all SCI employees, to search for any record described in paragraphs 1 through 4 above.

8.  [Evidence relating to who owned any seized computer and information including but not limited to: the time the computer was used, passwords, encryptions, browsing history, etc.]

In support of the search warrant application, the government provided an affidavit from

FBI Special Agent Michael S. Sirohman.   The affidavit discusses interviews that were had with

a number of SCI employees and a contractor involving the reimbursement of campaign

contributions.  For example, the affiant avers as follows:

12.    Between September 2011 and February 2012, fourteen of the SCI employee donors were interviewed.  Of the fourteen, nine donated to both campaigns, with the other five donating to one of the campaigns.  All of the interviewees donated on or about the same day and did so based on requests by either BENJAMIN SUAREZ or MICHAEL GIORGIO.  The requests to donate to the Renacci campaign occurred in March 2011. The requests to donate to the Mandel campaign occurred in May 2011. At the time of the donation requests, GIORGIO told nearly all of the interviewees that they would be reimbursed by SCI for the donation.  Most of these conversations occurred either at SCI or over the telephone.  When interviewed by the Federal Bureau of Investigation, most of the donors stated that they would not have donated to the campaigns, or would have donated a lesser amount, without the reimbursement by SCI. All of the employee donors were reimbursed by SCI within a few days of the donation. Non-employee spouses who donated were also reimbursed, but through their SCI employee spouse . The reimbursements were in the form of checks that were grossed up for taxes with the net amount totaling the actual donation.  For example, a $5,000 donation to a campaign resulted in a gross reimbursement check of approximately $7,575, with the net amount totaling approximately $5,000.

13.    According to several of the interviewees, in August 2011, or later, they were told for the first time that the reimbursements they had received from SCI in relation to the campaign donation(s) were going to be treated not as a reimbursement, but rather as an advance on future profit sharing and would be deducted from future profit sharing payments.  According to the interviewees, they were not told at the time of the reimbursement that the reimbursement amount would be deducted from their future profit sharing and they had understood that SCI or BENJAMIN SUAREZ, not the employee

3

donors themselves, would ultimately be responsible for incurring the expense of the donation.

The affiant also supports the search warrant application with information about SCI's non-compliance with grand jury subpoenas directed at SCI.  The subpoenas sought, among other things, documents related to litigation or threatened litigation against SCI brought in California provided to or received by Renacci's campaign or Mandel's campaign.  In response to the subpoenas, SCI produced 14,655 pages of documents.  In addition, the United States Attorney's Office sought records from Renacci and Mandel campaigns related to SCI employee and non-employee donations.  Both campaigns voluntarily produced documents.  According to the affiant, the government received documents from Renacci and Mandel that were not provided by SCI in response to the subponeas.  By way of example only, the affiant discusses an email sent from one of defendant Suarez's secretaries to Scott Guthrie, an employee of Mandel's campaign. The letter includes an attachment.  The attachment is a letter to Renacci from Napier, another business owner, discussing a proposed bill.  The letter discusses SCI's litigation issues with the California district attorneys.  It further asks for support in passing a bill.  The bill was apparently drafted at the request of SCI.  The affiant also discusses a number of other documents.

In addition, the affiant discusses documents received from Barb Housos, an SCI employee:

20.  On November 9, 2011, affiant received documents from SCI employee Barbara Housos, through her attorney.  The documents were retrieved by Housos from her office at SCI. The specific documents that Barbara Housos independently produced, that SCI did not produce, include the following: a fax cover sheet sent on April 8, 2011, from Scott Guthrie to Mr. Ben Suarez.  Handwritten on the fax is a note "Mike Give $30 M".  The second document is a memorandum to Ben Suarez from Scott Guthrie dated April 8, 2011, referencing the Ohio Senate Fund. At the bottom of the memorandum is a handwritten note "PD 4-13-11 CK #2674".  Affiant's review of other information shows that Benjamin and Nancy Suarez donated $30,000 to the Ohio Senate Fund in 2011.

4

The affiant also indicates that he reviewed a document entitled "Advance on Profit Sharing Report[s] October 2011."  According to affiant, the reports show deductions from either the emloyee's profit sharing or commissions earned in October 2011 or after.  The deductions reflect the return of the employee reimbursements of their campaign contributions.  The affiant indicates that during the employee interviews, the employees indicated that the reports were not provided to them until October 2011 or later, even though the donations were made in May of 2011.  A similar position is taken with respect to a monthly commission report.  According to the affiant, the document shows that although the employees made donations in March, April, or May of 2011 and earned commissions during those months, no deductions were made until after October 2011.  In August of 2011, the Toledo Blade ran a newspaper article picked up by the Canton Repository newspaper, in which contributions made by SCI employees were discussed.

To further support probable cause, the affiant discusses an interview and the corresponding grand jury testimony of Julius Toth.  Toth is a outside contractor for SCI.  The affiant avers as follows:

26.    On November 5, 2012, Julius Toth was interviewed by Special Agents of the Federal Bureau of Investigation.  Toth stated that MICHAEL GIORGIO asked him to donate $5,000 to the Josh Mandel campaign.  GIORGIO told Toth that SCI would reimburse him for the donation.  Toth agreed to donate and wrote a check to the campaign.  Toth believes he was reimbursed by SCI within one month of the donation.  Toth was never told by anyone at SCI that he would have to pay back the reimbursement.  Toth was not aware or ever told that the reimbursement was an advance on future commissions.  Toth was not aware if the reimbursement had ever been deducted from his commissions and did not believe that it had.

27.    On November 15, 2012, Julius Toth testified at the Federal Grand Jury in Cleveland, Ohio.  Toth testified that in May 2011, he had a conversation with MICHAEL GIORGIO at the SCI offices.  GIORGIO asked Toth to donate to the Mandel campaign.  GIORGIO told Toth that if he made a donation, SCI would reimburse him for the amount of the donation.  Toth agreed to contribute $5,000 to the Mandel campaign.  Toth confirmed that he was reimbursed by SCI for his donation to the Mandel campaign. The

5

amount of the reimbursement was approximately $7,000. The reimbursement was grossed up to cover taxes.

Toth further testified that he attempted to meet with Giorgio prior to Toth's grand jury testimony in order to request records related to his donation. Toth returned to SCI to pick up the documents he requested.  Giorgio provided Toth with a document entitled "Advance On Profit Sharing Report."  Toth indicated that he had never seen the report before that day and that no one had ever indicated that he would have to repay the reimbursement for the contribution.  Toth had to return to SCI again in order to obtain the check stub he initially requested.

The FBI interviewed Barb Housos, an SCI employee.  Housos confirmed that she created the Advance on Profit Sharing reports after Girogio told her that they would be treated as such.  She did not recall whether Toth ever repaid his reimbursement.  She further indicated that she did not create an Advance on Profit Sharing report for Toth.  Housos subsequently testified before the Grand Jury.  In her testimony, she related a conversation she had with Giorgio the week prior to her appearance.  Giorgio asked her for Toth's profit sharing report.  She informed Giorgio that she did not create one for Toth.  Giorgio said, "yeah, I'm sure you did."  She then checked her computer and discovered that a profit sharing report did exist for Toth.  She testified that "sure enough I had done one for [Toth.]"  She could not recall whether she created Toth's report at the same time she created the reports for SCI employees.  According to the affiant, a forensic analysis of computer files can provide evidence about when a file was created and by whom.

Housos also testified before the Grand Jury about a handwritten letter she received by courier.  Housos identified the handwriting as that of Suarez.  The letter reads as follows:

Barb, I want to spare you doing a grand jury testimony in your condition. I want to see if

6

you can do an affidavit like Donna. Mike P. can draft it from the attached brief to the new attorneys. Just look at your parts in the brief and tell me if it is accurate. This brief is my memory of what happened. If accurate just write OK on it. If you have corrections make notes. Return to me in the envelope and give back to Joe to bring back to me. Do not tell anyone about this. Also, the new attorneys said no one should admit to wrong doing even with a letter of immunity. That's a lie. They will still prosecute you as a co-conspirator. Also, do not admit to anything you think might be wrong doing to the attorneys. They could turn you in. Your testimony is key to keeping Mike G. from getting indicted which would take down SCI. Do not call me on this as our lines may be tapped.

In addition to the aforementioned factual information, the affidavit contains a discussion about the probable cause supporting the belief that business records and information could be located on computers and other media storage devices. The affiant further avers that based on an actual inspection of evidence related to this investigation, including spreadsheets and financial records, the affiant knows that computer equipment was used to generate, store, and print documents used in the scheme. In addition, there is a discussion about the nature of the examination of computers and the need to either remove the device from the premises or image the device.

Upon execution of the supboena, agents removed the following:

1. Four file folders described as "Calif Law Suit; Renacci-Mandel; Renacci & Mandel; and J. Toth $95,920;

2. Fax with memo envelope and email from Scott Guthrie;

3. Email, Profit Sharing Reports, Commission report and Briefing Memo;

4. Julius Toth 2011 Payment Report;

5. Western Digital [ID number] containing forensic images;

6. 5 file folders containing California Lawsuit documents, attorney briefing memo documents, and documents referencing the campaign contributions and related investigation;

7. Western Digital [ID number] containing forensic images; and

8.  Digital copy of email accounts for Pete Cook, Sharn Suarez, Timothy Ditty; Michael Giorgio, Barbara Housos, Julius Toth, John Whitacre, Benjamin Suarez, Angelina Jones, Nancy Workman.

Defendants move to suppress the evidence obtained in the search.  The government opposes the motions.  Each motion will be addressed in turn.

**ANALYSIS**

1.  Suarez's motion

Suarez and SCI move to suppress evidence obtained during the search on three grounds. According to these defendants, the affidavit improperly manufactured probable cause against Suarez by relying on statements made by co-defendant Giorgio.  Defendants also argue that the warrant improperly relies on the "Guthrie documents," which were documents searched for and seized by Housos allegedly at the direction of the government.  According to defendants, the Court cannot rely on these documents in assessing probable cause because they were obtained illegally during a warrantless search.  Defendants further claim that the statements in the affidavit attributed to "employees" of SCI cannot be considered because they are confidential informants whose reliability was not corroborated.  In response, the government claims that the argument that the warrant impermissibly relied on statements of Giorgio and not Suarez is wrong.  According to the government, the case defendants rely on is not on point.  Because probable cause existed to search SCI, the fact that the warrant relied on statements by Giorgio does not render the search invalid.  The government further argues that Housos was not acting as a government agent when she obtained copies of the Guthrie documents and provided them to her attorney, who in turn provided them to the government.  With regard to the confidential informant argument, the government claims that the identities of the employees who were

8

interviewed are set forth in the affidavit.  Thus, these witnesses cannot be considered to be "confidential informants."  Regardless, the government claims that the affidavit contains sufficient corroboration of the wrongdoing.

As an initial matter, the Court rejects the argument that the seized documents must be suppressed because the warrant relied on statements by Giorgio.  The government need only establish probable cause that criminal activity occurred by someone and that evidence is likely to be found at SCI.  Defendants simply point to no legal authority in support of the argument that a warrant to search SCI's premises must implicate Suarez in order to be valid.

The Court further rejects defendants' argument that the Court should consider the interviewees to be "confidential informants."  As the government points out, all employee donors are identified by name in paragraph nine of the affidavit.  The paragraph identifies 19 employee donors, including Giorgio, Suarez, two Suarez family members, and a deceased employee. Paragraph 12 indicates that 14 employees were interviewed.  While the paragraph does not expressly identify which of the 19 were interviewed, the interviewees clearly fall within the scope of named employees identified in paragraph nine.  Accordingly, these individuals are not "confidential informants" whose names the government declined to identify in order to use the individuals in the future.  Regardless, the Court agrees with the government that defendants offer no basis on which the Court should decline to consider the information provided by the employee donors.  The government specifically identifies statements made by Toth and Housos about the donations and reimbursements.  Again, defendants argue that these statements are insufficient to establish probable cause to search because "the affidavit does not name any SCI employee who asserted that he or she donated based on a request by *Mr. Suarez*."  (ECF 119 at

9

p. 5; emphasis added).  But once again, this argument is based on the faulty premise that the government must establish that the employees received requests from Suarez in order to validate a search of SCI. This is simply not the law.  Accordingly, the argument is rejected.

The Court finds that it need not reach the argument as to the Guthrie documents.  As set forth more fully below, even assuming Housos acted as a government agent in securing those documents, the remainder of the affidavit provides more than sufficient probable cause to support the search.[1]

2. Girogio's motion[2]

A. Probable cause

Defendants argue that evidence seized in the search must be excluded because the warrant "completely lacked" probable cause.  According to defendants, the affidavit supporting the warrant heavily relies on boilerplate language.  In particular, defendants claim that it contains "rote language" to support the assertion that incriminating documents would be found in SCI's offices and on its computers.  As did defendant Suarez, defendant Giorgio argues that the Guthrie documents obtained from Housos were illegally obtained because Housos acted as a government agent in searching for and seizing the documents.  In response, the government

---

[1]     The Court accepts defendants' argument for purposes of the motion and excises those statement from consideration in evaluating probable cause.

[2]     Defendant Giorgio argues at length that he has standing to challenge the search of SCI's premises.  The government does not respond to the argument.  Regardless, SCI has joined in the motion so the substantive issues must be addressed in any event. Therefore, the Court presumes without deciding that Giorgio does in fact have standing.

10

argues that the warrant is supported by probable cause.  According to the government, the inclusion of some boilerplate language by no means renders the search unsupported by probable cause.  The government claims that the affidavit extensively and in great detail sets forth probable cause to search SCI.

Upon review, the Court agrees with the government that the warrant is supported by probable cause.  The warrant contains a detailed recitation of the background and underlying investigation.  It further relies on interviews with two named individuals, *i.e.,* Housos and Toth. Toth, for example, indicated to agents that Giorgio asked Toth to donate to the Mandel campaign and that Giorgio indicated that SCI would reimburse Toth for the donation.  Toth believes he was reimbursed within one month and that he was never told that he would have to pay back the reimbursement.  The affidavit also recounts Toth's grand jury testimony in which he describes a visit to SCI to obtain a copy of his reimbursement check.  Instead of the check, Giorgio provided him with a document entitled "Advance on Profit Sharing Report."  He testified that he had never seen the document before and was never told that he would have to repay the reimbursement.  The affidavit further notes that Toth is not an employee of SCI, but rather an independent contractor.  Thus, it is difficult to understand why Toth would receive an "Advance on Profit Sharing."  The interview and grand jury testimony of Toth is consistent with the interviews of other SCI employees, who indicated that Giorgio requested that they donate to the campaigns of Mandel or Renacci and that they would be reimbursed for their donation.  These conversations occurred either at SCI or over the telephone.   In addition, with regard to probable cause to support the obstruction charge, the affidavit sets forth the language in the subpoena as well as a description of the documents not produced.  Defendants acknowledge that the "Napier"

11

letter is responsive to the subpoenas, but was not produced to the government.  In addition, the affidavit discusses a handwritten letter sent by Suarez to Housos in which he provides her with "his memory" of what happened and asks her not to tell anyone about it.  Suarez then proceeds to inform her that she will be prosecuted as a co-conspirator even if she is provided with a letter of immunity.  He further indicates that her own attorneys could turn her in and that her grand jury testimony is "key to keeping Mike G. from getting indicted which would take down SCI."  Suarez ends the letter with an instruction not to call him as the "lines may be tapped."  This letter, in conjunction with the Napier letter and emails from Suarez's secretary that were not produced by SCI, creates sufficient probable cause of obstruction to search SCI's premises.[3]

Defendants argue that the Guthrie documents referenced in paragraph 20 of the affidavit were obtained illegally because Housos was acting as a government agent.  The Court finds that

---

[3]      In their reply brief, defendants attempt to point out that some of the documents relied on in the affidavit were not actually responsive to the subpoena and therefore cannot support a finding of probable cause.  While some of the documents may arguably be non-responsive, the Court finds that, on the whole, probable cause of obstruction exists sufficient to support the search.  For example, some of the documents that SCI did not produce appear to have been withheld because they were documents sent by Suarez's secretary, who was not specifically named in the subpoena.  The subpoena, however, expressly called for the production of documents from Suarez.  The fact that Suarez used his secretary (Angelina Jones) to effect the communication does not necessarily mean that the document is non-responsive.  Here, Judge Adams was in possession of the language in the subpoena as well as a description of the fact that the communication was between Jones and Mandel's staff.  The Court cannot say that Judge Adams's determination is clearly erroneous.  *See, e.g., United States v. Calloway*, 116 F.3d 1129 (6th Cir. 1997)(The "determination of probable cause is entitled to 'great deference' and must not be reversed in the absence of clear error.").

it need not address this issue because even if the Court refuses to consider these documents, the warrant is supported by probable cause as described above.   In addition, the Court rejects defendants' argument that probable cause is lacking because the warrant contains boilerplate language.  Although the warrant contains some boilerplate language regarding the fact that businesses store documents on their premises and that business documents are likely to be discovered on computers, the affidavit contains a substantial amount (no less than twelve *pages*) of detailed information specific to this case.  This is simply not the type of warrant that is supported merely by boilerplate language.  *See, e.g., United States v. Moore*, 661 F.3d 309 (upholding finding of probable cause in a warrant containing boilerplate language and only one paragraph of specific factual information).  Accordingly, defendants' argument is rejected.[4]

Defendants also argue that the warrant lacks probable cause because it is based on alleged violations of law that could not have occurred.  In this section, defendants present the arguments they made in support of their motions to dismiss.  For example, defendants argue that making a conduit contribution is not against the law.  Nor is the mere "passive possession" of documents.  Defendants claim that the failure to produce certain documents cannot constitute obstruction because they were not responsive to the subpoena request or were otherwise privileged.  Defendant Giorgio also argues that the subpoena was not directed at him personally. Therefore, he had no duty to produce the documents.  Because none of the alleged wrongdoing

---

[4]     Moreover, defendants' challenge regarding boilerplate language is directed in large part at the affiant's statements regarding the likelihood that business documents are likely to be found on computers.  The Court finds that this statement is virtually common sense and any reliance on "boilerplate" language in this regard is not improper.

amounts to a criminal act, "the factual predicate for the search warrant was incorrect."  Upon review, the Court rejects this argument for the same reasons set forth in the Memoranda of Opinion and Order addressing defendants' motions to dismiss.  Because the affidavit describes illegal conduct, the search warrant is not invalid on this basis.[5]

### B.  Particularity

Defendants next argue that all evidence must be suppressed because the warrant lacks particularity.  According to defendants, the warrant provides no "real" limitations on the location to be searched.  Nor does it adequately described the "things to be seized."  The government disagrees, arguing that Attachment A provides specific locations within SCI's 99,600 square foot structure to which the search will be directed.  In addition, the government argues that this is a "paper work puzzle" and, therefore, broad searches for documents are permitted.  According to the government, the categories of documents sought in Attachment B are set forth with sufficient particularity to enable the officers to search.

Upon review, the Court finds that suppression of all evidence obtained from the search is not warranted.  Attachment A to the warrant provides that the location to be searched is the following:

A.  The individual office spaces and any other areas used or maintained for storing records (including hard copy records, stand-alone computers, and any other electronic

---

[5]     The Court rejects defendants' argument that a *Franks* hearing is required.  Defendants claim that the affiant indicated in the warrant application that one of the documents responsive to one of the subpoenas contained affidavits.  Defendants provides copies of the affidavits, which indicate that they were signed *after* the warrant application was submitted.  The Court, however, need not hold a *Franks* hearing because it did not consider the document or the attached affidavits in determining probable cause.

storage media) associated with the following individuals: Donna Blubaugh; Michael Collins; Eugene Cook; Sharon Suarez; Timothy Ditty; Michele Ditty; Antonia Fernandez; Michael Giorgio; Douglas Heck; Barbara Housos; Paul Klingaman; Michael Lawrence; Sherri Peters-Litten; Michael Schumacher; Julius Toth; John Whitacre (deceased); Benjamin Suarez; Nancy Suarez; Angelina Jones; Nancy Workman, and any secretarial staff who support the foregoing individuals.  The office of the General Counsel for SCI will not be searched.

Plainly, the warrant permits the officers to search office spaces and records storage areas associated with twenty individuals and their secretarial staff.  The Court rejects defendants' argument that the warrant lacks particularity and permits a wholesale search of the entire 99,000 square feet of the SCI headquarters "effectively without any limitation."  Although defendants argue that the language used in Attachment A, such as "associated with" or "secretarial staff" lacks particularity, the Court finds that in reading the language as a whole, a reasonable officer would understand the limited search locations permitted by the warrant.

Similarly, the Court rejects defendants' argument that the warrant fails to adequately identify the "things to be seized."  As an initial matter, the parties dispute whether this case is a "paperwork puzzle" thus allowing for a broader and more generalized search for documents. The Court finds that it need not address this issue since Attachment B adequately describes the items to be seized in any event.  As the government points out, Attachment B calls for the seizure of the following records:

1.  All records...that reflect or pertain to political campaign-related donations, requests or solicitations for such donations, reimbursements of such donations, or deductions from compensation related to donation reimbursements.

2.  All records...that reflect or pertain to contacts with elected officials, campaign workers, or other public office or campaign staff in any way relating to the group of California District Attorneys' lawsuit against SCI.

3.  All records...that reflect or pertain to contacts with elected officials, campaign workers, or other public office or campaign staff for Congressman Jim Renacci or U.S.

15

Senate candidate Josh Mandel.

4. All records...that reflect or relate to an attempt to influence...an investigation or official proceeding involving campaign donations, related reimbursements, deductions from compensation, or the lawsuit by the group of California District Attorneys against SCI.

The Court finds that the categories are sufficiently particular to withstand scrutiny.  The first three categories are limited to records involving campaign donations and reimbursements, records regarding contacts with elected officials involved in the California lawsuits against SCI, and contacts with elected officials.  Defendants argue that "none of these items contains any temporal limitation, identification of specific events or individuals, or references to specific documents by author, recipient, or date."  The Court rejects this argument.  As the government notes, there was no way for the affiant to know what *specific* document existed.  For example, defendants appear to suggest that the government be required to identify a document by author, recipient, and date.  That is simply not possible.  The Court finds that the categories of documents sought are sufficiently particular to allow the officers to identify responsive documents.  The categories are also narrowly tailored to the alleged misconduct at issue.

The Court similarly rejects defendants' argument that the warrant is insufficiently particular because it does not define "group of California District Attorneys' lawsuits against SCI."  Just because an item could be described with more particularity does not render the warrant so lacking in particularity that suppression is warranted.  The Court finds that the fourth category is also described with sufficient particularity.  It calls for the seizure of documents that reflect an attempt to "influence...an investigation or official proceeding involving campaign donations, related reimbursements, deductions from compensation, or the lawsuit by the group of California District Attorneys against SCI."  Again, the affiant could not possibly know what

16

*specific* document existed at the time the government sought the warrant.  Here, the warrant does not seek a wholesale seizure of all of SCI's business records.  For example, unlike cases involving a search of general business records which have nevertheless withstood scrutiny, the warrant in this case does not cover items such as sales records, research and development, customer information, or the like.  Rather, the warrant was narrowly tailored to the search and seizure of records directly related to the charged conduct.

Moreover, as the government notes, defendants wholly fail to identify any specific item that was seized improperly as a result of the allegedly overbroad warrant.  Certainly the warrant is not so lacking in particularity as to render all evidence seized from the search excludable.  Although not dispositive, the Court notes that it appears that the officers seized only a few boxes of documents, along with the specific computers identified in the warrant.  On the whole, the Court finds that the warrant adequately described both the place to be searched and the items to be seized.[6]

C.  Attorney-client privilege

Defendants next argue that three sets of documents obtained during the government's search are protected by the attorney-client privilege and work product doctrine and must be suppressed.  According to defendants, these documents consist of two reports summarizing profit

---

[6]  The Court also rejects defendants' argument that all evidence must be suppressed because the warrant does not sufficiently identify the criminal activity.  On the whole, the warrant is sufficiently particular to enable the officers to properly conduct the search.  Defendants provide no authority for the proposition that a warrant must specifically identify the suspected misconduct, with the exception of a citation to a dissenting opinion.  Absent some authority, the Court rejects defendants' argument.

sharing and handwritten notes regarding wages of "conduit contributors."  Defendants argue that the documents were prepared by Giorgio at the request of his counsel.  Defendants claim that these documents disclose trial strategy.  Defendants also point out that the government is in possession of all of the underlying documents that support the reports.

In response, the government argues that no constitutional violation occurred in seizing these documents.  According to the government, the search warrant expressly excluded the office of SCI's general counsel.  In addition, the government points out that it utilized a "taint team" to review any potentially privileged documents.  If the team believed a document may be protected by the attorney-client privilege, it applied to Judge Oliver for permission to use the document during the investigation.  As such, the Court cannot say that the government violated defendants' constitutional rights in conducting the search.  The government argues that, until now, counsel has never argued that the documents were privileged.  In any event, the government argues that even if the Court finds that the documents are protected by the attorney-client privilege or work product doctrine, the crime-fraud exception applies and, therefore, suppression is not warranted.

Upon review, the Court finds that suppression is not warranted.  Defendants fail to establish that the search warrant, which expressly excluded the office of SCI's corporate counsel, somehow caused a constitutional violation requiring suppression. Nor is there any suggestion that the search itself improperly led to the seizure of these documents.  There is nothing on the face of the documents that would remotely suggest to a reasonable officer that the documents were subject to either the attorney-client privilege or work product doctrine.  Nor do the documents disclose trial strategy.  Thus, even if the documents are otherwise privileged, the search warrant and subsequent search did not give rise to a constitutional violation.  To the

extent defendants are seeking to exclude the documents at trial, there is simply insufficient information from which the Court could deem the documents privileged.  There is nothing on the face of any of the documents that indicates they were prepared at the request of counsel.  The documents themselves disclose no trial strategy and contain no legal advice.  And, by defendants' own admissions, the documents at issue are simply a summary of other documents possessed by the government.   Defendants' bare and unsupported assertion that the documents were prepared at the request of counsel is insufficient to warrant exclusion at this time on the basis of the attorney-client privilege or work product doctrine.[7]

Nor does defendants' citation to 18 U.S.C. § 1515 provide assistance.   That provision provides, "This chapter does not prohibit or punish the providing of lawful, bona fide, legal representation services in connection with or anticipation of an official proceeding."   According to defendants, this statutory requirement was not considered by Judge Adams or the agent. Defendants claim that the government must allege that they were not "providing lawful, bona fide, legal representation services" in connection with an official proceeding in order to avoid the application of Section 1515.  It is not clear whether defendants claim that the failure to do so renders the search improper.  Regardless, no serious argument could be made that defendants

---

[7]     Although defendants request a hearing on this issue, the Court finds that a hearing is not warranted.  The documents do not facially implicate the attorney-client privilege or work product doctrine and no evidentiary support, *e.g.*, an affidavit from counsel, is provided by defendants.  The government points out that in grand jury testimony, an SCI employee informed the grand jury that Giorgio's attorney asked the employee to tell the grand jury that the documents were prepared by Giorgio at the request of counsel.  However, the Court does not find this evidence to be sufficient to establish the privilege.

19

themselves were "providing lawful, bona fide, legal representation services."  Accordingly, any

such argument, regardless of the context in which it is asserted, is rejected.

D.  Exclusionary rule/good faith

Defendants argue that the exclusionary rule bars the introduction of all evidence seized

during the search.  The Court rejects this argument for the reasons set forth above.  The Court

further finds that even if some part of the warrant was technically deficient, or the initial

probable cause determination was erroneous, the good faith exception applies.  *See, United*

*States v. Leon*, 468 U.S. 897 (1984)(where officers rely in an objectively reasonable fashion on a

search warrant issued by a neutral magistrate that is subsequently found to be invalid, the Fourth

Amendment exclusionary rule does not require suppression of the fruits of the search).  *See also,*

*U.S. v. Evers*, 669 F.3d 645 (6th Cir. 2012)(assuming *arguendo* that warrant was invalid for lack

of particularity, *Leon*'s "good faith" doctrine applied and suppression was not warranted).  Here,

defendants argue that the affidavit relied solely on boilerplate language, improperly relied on

documents illegally obtained by Housos, and was "predicated on violations of law that could not

have occurred."  The Court has excised the documents obtained by Housos and, without those

documents sufficient probable cause nonetheless exists.  Regardless, even if the remainder of the

affidavit is insufficient to establish probable cause, the warrant is not "so lacking in probable

cause as to render official belief in its existence entirely unreasonable."  The same holds true

with respect to defendants' argument that the affidavit contains boilerplate language.  By

separate Order, the Court has concluded that the charges against defendants are, in fact,

violations of the law.  Therefore, defendants' argument that a reasonable officer would not have

relied on Judge Adams's determination that probable existed to support a criminal violation is

20

without merit.

**CONCLUSION**

For the foregoing reasons, the Motion of Benjamin Suarez to Suppress Evidence Seized

on January 22, 2013 (Doc. 46) and Defendant Michael Giorgio's Motion to Suppress (Doc. 63)

are DENIED.

IT IS SO ORDERED.


      /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 5/8/14