**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| United States of America, | ) | **CASE NO. 5:13 CR 420** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| Benjamin Suarez, et al., | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| Defendants. | ) | |


**<u>INTRODUCTION</u>**

This matter is before the Court upon the Motion of Benjamin Suarez for a Judgment of Acquittal on Count 8 Or, in the Alternative, a New Trial on That Count (Doc. 288).  For the reasons that follow, the motion is DENIED.

**<u>FACTS</u>**

A federal grand jury indicted defendant Benjamin Suarez, along with two co-defendants, for various counts related to campaign finance fraud and obstruction of justice.  After a lengthy trial, the jury acquitted defendant Suarez on all counts with the exception of Count Eight. Count

1

Eight charged defendant with witness tampering in violation of 18 U.S.C. § 1512(b)(1).

Specifically, Count Eight charged as follows:

99.     Beginning in or around July or August 2012 and continuing through in or around February 2013, in the Northern District of Ohio, Eastern Division, the defendant, BENJAMIN SUAREZ, did knowingly attempt to use intimidation, threaten, and corruptly persuade another person and engage in misleading conduct toward another person who worked for SCI, whose initials are B.H., by (a) writing and having delivered to B.H. at B.H.'s home a one-page note in SUAREZ's handwriting with an attached five-page typewritten document relating to and providing direction regarding B.H.'s upcoming testimony before a federal grand jury, telling her not to communicate with her own lawyer, and containing an inaccurate version of events that SUAREZ wished to present; (b) writing and circulating an inaccurate letter to the employees of SCI opining that B.H.'s mental abilities had been compromised, referencing medical issues experienced by B.H., alleging that B.H. was under federal investigation, and opining that B.H. had suffered a tragic loss as a result of the investigation; and (c) making statements to B.H. opining that B.H.'s mental abilities had been compromised, all with the intent to influence, delay, and prevent the testimony of B.H. in an official proceeding, to wit: testimony before a federal grand jury sitting in the Northern District of Ohio and any subsequent related trial, in violation of Title 18, United States Code, Section l5l2(b)(1).

This Court addressed an extensive number of complex and lengthy pretrial motions related to virtually every other count in the superseding indictment.  Defendant made no pretrial motion with regard to Count Eight.  Although defendant raised the issue of duplicity and double jeopardy with regard to other counts in the indictment, defendant made no such argument with respect to Count Eight.

This Court required the parties to submit trial briefs and jury instructions.  The Court's pretrial Order required the following:

The following must be included in a trial brief which is to be submitted to the Court not later than 4:00 p.m., two working days prior to the final pretrial:

***

2

    2.      A joint set of jury instructions identifying the following:

        a) instructions agreed upon by all counsel with supporting legal authority; and

        b) instructions in dispute with the party proposing the instruction stating supporting reasons and legal authority, and the party objecting to the instructions stating supporting reasons and legal authority.

Defendants filed a joint trial brief.  The joint trial brief contains an exhaustive analysis of various proposed jury instructions.  For purposes of this motion, defendant points to two objections they raised in their trial brief with respect to the jury instructions related to Count Eight.  First, defendant points out that he objected to the "attempt" instruction as follows:

The language beginning with "if" in the second sentence of Part 5 of the government's proposed instruction improperly waters down the government's burden of proving an attempt by omitting the "intent" and "overt act" elements, both of which are required by Sixth Circuit precedent. *See United States v. Williams*, 704 F.2d 315, 321 (6th Cir. 1983) ("The two requisite elements of an attempt are (1) an intent to engage in criminal conduct and (2) the performance of one or more overt acts which constitute a substantial step towards the commission of the substantive offense."). When instructing the jury on what constitutes an attempt for purposes of Count 8, instead of the language beginning with "if" in the second sentence of Part 5 of the government's proposed instruction, the Court should use the following language that tracks the language quoted from the Sixth Circuit's decision in *Williams*: "if he intended to engage in criminal conduct and he performed one or more overt acts which constitute a substantial step towards committing the crime."

Defendant also points out that he objected to the "corruptly persuade" language related to Count Eight.  Specifically, the trial brief indicates as follows:

The government's definition of "corruptly persuade" in Part 4 of its proposed instruction is incorrect for the reasons stated in Defendants' joint memorandum regarding the proper definition of "corruptly" to be used in jury instructions. The Court should use the definition of "corruptly" set forth in that memorandum, so that the definition of "corruptly persuade" states: "To 'corruptly persuade' means to knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice, persuade another person to engage in certain conduct."

On the same day, the government provided an "annotated" set of jury instructions (ECF 152-1) as required by the Court's pretrial Order.  The joint set of jury instructions contains a footnote that indicates that the government provided all defendants with a proposed set of instructions and that only co-defendant Giorgio responded.  The government then incorporated some of the changes requested by co-defendant Giorgio and declined to incorporate others.  As required by the Court's Order, the government identified which instructions were at issue and provided legal support for both positions.  In the annotated set, there is no objection identified with regard to the "attempt" instruction.  There is, however, an indication that defendants objected to the "corruptly persuade" language.  No defendant ever informed the Court that the annotated set of jury instructions provided by the government misstated the objections in any fashion.  This document became the "working document," which the Court and the parties used during the lengthy discussions regarding jury instructions.[1]

At the close of the government's case, defendants filed a written motion for judgment of acquittal and the Court heard oral argument on the motion.  Although the motion was detailed and lengthy, defendant Suarez did not move with respect to Count Eight.  The Court granted defendants' motion in part.

---

[1]    Defendant notes that "at the outset, the Court stated that it would use the government's proposed jury instructions, except those for which it identified changes or that it rejected during the meeting."  Defendant then claims that in doing so the Court proceeded to review "the government's proposed jury instructions."  Not so.  The Court reviewed the annotated instructions, which contained defendants' objections.  Defendant Suarez simply did not comply with the Court's pretrial Order because he failed to participate in the preparation of the joint jury instructions that were required to be submitted.

4

Thereafter, the Court conducted an in-chambers jury charge conference at which the jury instructions were discussed at length.  At no time did any party raise any issue with the attempt instruction.  After the discussions, and as a result of the Court's own research, the Court announced the instructions that it would provide to the jury at the close of the case and provided each attorney with a copy.  Notably, the Court accepted some of the instructions offered by both parties and amended other instructions.  One of the instructions amended by the Court is the "corruptly" instruction.  In other words, the Court did not give the precise instruction proposed by either the government or the defendants.   Regarding "corruptly persuade," the Court gave the following instruction:

> To corruptly persuade, means to act knowingly with a wrongful, immoral or evil purpose to convince or induce another person to engage in certain conduct.

The Court further instructed the jury that "to act 'corruptly' as that word is used in these jury instructions means to act voluntarily and deliberately and for the purpose of improperly influencing, or improperly obstructing, or improperly interfering with the administration of justice."  (Doc. 297 at 236).

The "attempt" instruction given by the Court is identical to the instruction provided in the annotated jury instructions.  The Court further read the indictment to the jury and provided a copy to the jurors during their deliberations.

After charging the jury, the Court called the attorneys to sidebar and asked whether there were any objections to the jury instructions that had just been given:

> THE COURT: On behalf of the government, any objections?

> MS. RENDON: No, Your Honor.

5

MR. SCHAMEL: On behalf of Mr. Suarez no objections.

THE COURT: On behalf of defendant Benjamin Suarez.

MR. SCHAMEL: No objections, Your Honor.

The jury then began their deliberations.  On a Friday during deliberations, the jury sent the Court the following question regarding Count Eight: "In order to find as it pertains to superseding indictment Page 34, Paragraph 99, does the burden have to be met on A, B and C, or any one?"  According to defense counsel, he requested that the Court indicate that the burden must be met as to all.  Regardless, eventually counsel all agreed that the answer should be "any one."  Defense counsel then requested that the Court add "unanimously beyond a reasonable doubt," to which the government objected.  Ultimately, the Court provided the jury with the following answer, "Any one beyond a reasonable doubt."   Shortly thereafter defense counsel requested that the Court instruct the jury that it "must acquit Mr. Suarez on Count 8 unless they are unanimous as to (a), (b), or (c)."  In other words, defense counsel wanted an instruction indicating that the jury must agree on the same one of the three acts identified in a, b, or c.  The Court responded that the jury question had already been answered.

Late Sunday evening, defendant filed a written motion requesting an additional jury instruction on Count Eight.  Defendant requested that the Court instruct the jury as follows: "You must be unanimous as to which one of the alleged acts identified in (a), (b), and (c) satisfies this element beyond a reasonable doubt.  If you are not unanimous on this point, you must acquit Mr. Suarez on Count 8."  The government filed an opposition at noon on Monday and the jury returned its verdict shortly thereafter.

6

After the Court read the jury's verdicts, defense counsel raised the issue of polling the jury.  After some discussion, the Court then polled the jury and each juror indicated that the jury unanimously agreed as to at least one of the three acts.

This motion followed.  The government opposes defendant's motion.

**ANALYSIS**

Defendant raises three separate grounds in support of his motion.  Each will be addressed in turn.

1.  Duplicity

Defendant argues that Count Eight is duplicitous because it charges three separate counts of witness tampering.  Because the jury verdict did not reveal which of the three offenses charged in (a), (b), and (c) formed the basis of the verdict, the government violated the Double Jeopardy Clause.  Defendant claims that each of the acts identified in sections (a), (b), and (c), involve separate time frames and required separate proofs.

In response, the government argues that defendant waived any duplicity argument by failing to raise the issue before trial commenced.  In the event the Court finds that defendant did not waive this argument, the plain error standard applies.  According to the government, Count Eight alleges three different means for committing the same offense.  Thus, it is not duplicitous.  Moreover, all three means are intimately related.  Alternatively, even if defendant's argument was both not waived and credible, any prejudice that may have resulted was cured by the Court's polling of the jury because the polling demonstrated that the jury unanimously agreed on one or more of the means described in Count Eight.  The government further argues that defendant's double jeopardy argument fails because the theoretical risk of a second prosecution is

7

insufficient to establish a violation.

In reply, defendant argues that his duplicity argument is not waived because (1) he is challenging harm to his substantive rights, not merely the form of the indictment; (2) he previously objected to the duplicity issue through his objection to the jury instructions; and (3) his request to poll the jury as to which of the three acts formed the basis for the jury's verdict was rejected, even though such polling would have cured any duplicity problem.

Federal Rule of Criminal Procedure 7(c)(1) provides that a count in an indictment may "allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means."  A duplicitous indictment, however, is one that "sets forth separate and distinct crimes in one count."  *Untied States v. Davis*, 306 F.3d 398, 415 (6th Cir. 2002).  A "duplicitous charge calls into question the unanimity of a verdict of guilty."  *United States v. Savoires*, 430 F.3d 376, 380 (6th Cir. 2005).  In addition to a unanimity problem, duplicitous indictments cause the danger that "defendant may not be properly notified of the charges against him,...he may be subject to double jeopardy, [and] he may be prejudiced by evidentiary rulings during the trial."  *United States v. Alsobrook*, 620 F.2d 139, 142 (6th Cir. 1980).

"The yardstick in determining whether there is duplicity or multiplicity is whether one offense or separate offenses are charged and...this is a difficult and subtle question.  The test announced often in cases is that offenses are separate if each requires proof of an additional fact that the other does not."  *United States v. Davis*, 306 F.3d 398, 415 (6th Cir. 2002)(citations and quotations omitted).

In this case, the only harm identified by defendant in support of his duplicity argument

8

relates to double jeopardy concerns.  Notably, defendant does not, nor could he, argue that issues regarding unanimity are impacted as a result of the verdict.  The parties do not dispute that (1) the Court gave a general unanimity instruction during the jury charge and (2) at the request of the defendant, the Court polled the jury after it returned its verdict as to whether it unanimously agreed as to at least one of the three acts.  Each juror responded in the affirmative.  Thus, based on the polling alone, there is not doubt that there is no unanimity issue with regard to the jury's verdict.   Nor does defendant argue that he was not properly notified of the charges against him or that he was prejudiced by evidentiary rulings during trial.  Thus, the only issue is whether the indictment is duplicitous such that double jeopardy concerns are implicated.

The Court must first determine what standard of review applies to defendant's claim. The standard depends on whether defendant raised an objection prior to trial.  "Although a defendant does not waive a duplicity challenge by failing to raise the objection before trial, [ ] review is limited to plain error unless the defendant raises the duplicity issue in objections to the jury instructions."  *U.S. v. Lawrence*, 557 Fed.Appx. 520 (6th Cir. March 3, 2014).  If a proper objection is raised, the *de novo* standard applies.  On the other hand, if no timely objection to duplicity is raised through a motion to dismiss or through the jury instructions, the Court will apply the plain error standard.

Upon review, the Court finds that the plain error standard applies to defendant's double jeopardy concerns related to the allegedly duplicitous indictment.  Here, defendants filed numerous pretrial motions, which included a motion directed at duplicity.  In that motion, defendant expressly identified double jeopardy concerns associated with other counts in the indictment.  Nowhere in that motion does defendant challenge that Count Eight is duplicitous or

9

that defendant's double jeopardy rights are implicated.  Moreover, after substantial research and a lengthy jury conference with all parties, the Court announced the jury instructions that it would give the jury.  These instructions were not simply a verbatim recitation of the instructions proposed by the government.  Immediately after the jury charge and before the jury retired for deliberations, the Court specifically inquired at sidebar as to whether any party objected to the instructions.  Twice counsel for defendant indicated that there were "no objections" to the jury instructions.  During deliberations, the jury asked the following question directed at Count Eight, "In order to find as it pertains to superseding indictment Page 34, Paragraph 99, does the burden have to be met on A, B and C, or any one?"  All parties agreed that the answer should be "any one."  Defense counsel asked that the Court add "unanimously beyond a reasonable doubt," and the government objected.  The Court answered the question, "Any one beyond a reasonable doubt."  (ECF 285 at p.13).  Separate counsel for defendant then emailed the Court requesting a more specific unanimity instruction.  The Court responded that it had already answered the jury's question.

Defendant next sought an additional jury instruction directed at unanimity.  (See, ECF 274)(requesting that the Court instruct the jury that "I am now providing you with this additional instruction on Count 8: You must be unanimous as to which one of the alleged acts identified as "(a)," "(b)," and "(c)" satisfies this element beyond a reasonable doubt. If you are not unanimous on this point, you must acquit Mr. Suarez on Count 8).  Then, after the jury returned its verdict, the issuing of polling the jury arose, which again was directed at concerns regarding unanimity.  Defense counsel requested polling, confirming that his concerns were grounded in unanimity:

THE COURT: Is there anything on behalf of the government?

10

MS. RENDON: No, Your Honor.

THE COURT: On behalf of defendant Benjamin Suarez?

MR. SCHAMEL: Yes, Your Honor....  As to Count 8, we would ask that Your Honor specifically poll the jury as to which of the three acts, the A, the B, or the C of Count 8 that they found on. If they, in fact, they found unanimity as to one of those three, we think we need to preserve that for appeal.

MS. RENDON: Your Honor, the government would object.... At a minimum, if the Court is going to poll the jury, it should not be as to which one, but simply did you unanimously find that the defendant was guilty on Count 8 with respect to one or more of the subsections.

THE COURT: I completely agree with Ms. Rendon. To go down the line and ask each juror which act it was is just completely inappropriate, and I won't do that.

MR. SCHAMEL: That's fair, Judge. I'm not asking -- they have to have been unanimous as to one of them, and that's why when we had the note –

THE COURT: Of at least one.

MR. SCHAMEL: Correct.

THE COURT: At least one.

MR. SCHAMEL: Correct. That's why I asked for unanimity, the instruction, for the note.

***

THE COURT: ....I will -- the poll will simply be did you unanimously -- regarding Count 8 as to defendant Benjamin Suarez, did you unanimously agree on one -- on at least one of the three acts.

MR. SCHAMEL: Thank you, Your Honor.[2]

---

[2]    Defendant argues that in this colloquy he preserved his request that the jury be polled as to which of the three acts supported his conviction.  In other words, defendant argues that he raises the issue of duplicity as it relates to double jeopardy in this exchange. The Court disagrees.  A plain reading of this exchange demonstrates that defendant requested polling for the purposes of establishing unanimity.  Moreover, even if this could be

11

In short, the Court finds that defendant did not raise double jeopardy concerns on the basis of duplicity as to Count Eight.  All of the issues defendant raised regarding Count Eight plainly involve unanimity concerns, which were fully addressed at trial.  Because defendant never raised duplicity on the basis of double jeopardy, this Court never had an opportunity to address this issue.  Accordingly, the Court finds that the plain error standard applies.[3]

As the government points out, plain error is established only if  "(1) there was error that (2) was plain, (3) affected a substantial right, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Martin*, 520 F.3d 656, 658 (6th Cir. 2008)(quotation omitted).  Here, the Court finds that it did not plainly err in allowing Count Eight to go to the jury.  Defendant argues that Count Eight charges multiple offenses each requiring proof of different acts.  In other words, each "act" is not a separate means for committing the offense of witness tampering.  Rather, each "act" is an entirely separate offense. Because the jury did not indicate which of the three acts constituted the basis for the conviction, defendant is exposed to the threat of a second prosecution for any of the three acts.

In response, the government argues that Count Eight simply charges three different means for committing the offense of witness tampering.  In the alternative, the government cites cases in which the charged acts were part of an overall scheme and, therefore, not duplicitous. The government also argues that the harm to defendant is only theoretical at this point.  Because there is no indication that the government intends to charge defendant again for any of the three

---

considered "raising" the issue of double jeopardy, it did not occur until after the jury returned its verdict.

[3]     The Court assumes *arguendo* that defendant's challenge involves a substantial right as opposed to a technical error.

acts, there is no double jeopardy problem at this time.

Upon review, the Court finds that it did not commit plain error in allowing Count Eight

to go to the jury. Count Eight charges:

> 99.    *Beginning in or around July or August 2012 and continuing through in or around February 2013*,...BENJAMIN SUAREZ,  did knowingly attempt to use intimidation, threaten, and corruptly persuade..., *all with the intent to influence, delay, and prevent the testimony of B.H. in an official proceeding, to wit: testimony before a federal grand jury sitting in the Northern District of Ohio* and any subsequent related trial, in violation of Title 18, United States Code, Section l5l2(b)(1).

(ECF 27 at ¶ 99)(emphasis added).

Although the issue of whether the indictment is duplicitous may be debatable, defendant

wholly fails to satisfy the plain error standard.  On its face, the indictment charges witness

tampering through a "continuing" violation.  The continuing violation began in the summer of

2012 and ended in the winter of 2013.  During that time frame, the government charges that

defendant engaged in one scheme to tamper with B.H.'s grand jury testimony.  The Sixth Circuit

has recognized that consolidating several acts into a single count does not necessarily render an

indictment invalid:

> Several courts have upheld the validity of indictments that consolidate several acts into a single count when such acts represent a single, continuing scheme that occurred within a short period of time and that involved the same defendant.  The determination of whether a group of acts represents a single, continuing scheme or a set of separate and distinct offenses is a difficult one that must be left at least initially to the discretion of the prosecutor....  If any of the dangers of [duplicity] are present, the acts of the defendant should be separated into different counts even though they may represent a single, continuing scheme.

*United States v. Alsobrook*, 620 F.2d 139, 142 (6th Cir.1980)(indictment charging defendant

with one count of violating the Travel Act based on six trips to Michigan was not duplicitous

where indictment charged that the events occurred "on or about September 1, 1977, and

13

continuously thereafter."). *See also, United States v. Olmeda*, 461 F.3d 271 (2nd Cir. 2006)( "To the contrary, this court has long held that acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme.")  Although defendant in this case points out that each separate act of witness intimidation requires separate proof, this argument ignores the continuing violation theory.  Undoubtedly, the separate trips at issue in *Alsobrook* also required separate proofs.

Defendant argues that the time period at issue in *Alsobrook* was shorter than the time period at issue in this case.  Defendant further claims that the events in *Alsobrook* were identical trips, whereas the events in this case deal with different acts involving different documents and individuals.  Regardless of whether this case neatly fits within the confines of *Alsobrook*, the Court finds that *Alsobrook* provides sufficient support such that this Court did not plainly err in allowing Count Eight to go to the jury.  Defendant is represented by experienced and meticulous attorneys.  Defendant filed a significant number of pretrial motions including motions raising double jeopardy with respect to other counts in the indictment.   No motion was directed in any way to Count Eight.  Defendant twice moved for judgment of acquittal.  Again, the motion was not directed at Count Eight.  At no point prior to trial did defendant ever argue to this Court that Count Eight raised double jeopardy concerns.  It is difficult to imagine that defendant's seasoned attorneys would have missed this issue if it would result in "plain error."  The Sixth Circuit recognizes the continuing violation theory.  The Court finds that it did not err in failing to *sua sponte* determine that Count Eight should not be submitted to the jury based on double jeopardy concerns.  This is especially so in that "determining whether there is duplicity...is a difficult and

14

subtle question." *Davis*, 306 F.3d at 415.

The Court's conclusion is bolstered by the fact that the harm stemming from double jeopardy is not present based on the wording of the indictment.  Here, as in *Alsobrook*, the "government's theory of prosecution was sufficiently clear to provide adequate notice of the charges against [defendant] and to preclude any potential for double jeopardy." *See also, Olmeda*, 461 F.3d at 283 (noting that double jeopardy claim fails where a plain reading of the initial indictment demonstrates that subsequent charges were subsumed within the initial indictment).   The indictment very clearly charges defendant with all three acts.  Moreover, defendant actually received benefits from the government's decision not to charge each of the three acts as separate offenses.   Defendant's exposure to cumulative sentences is eliminated and the government was unable to portray defendant as the perpetrator of multiple crimes of witness tampering.  *See, Alsobrook*, 620 F.2d at 143 ("we are hesitant to create an inflexible rule that would force the government to charge each punishable act as a separate count and thereby to cumulate offenses and possible punishments); *Olmeda*, 461 F.3d at 281.  In all, the Court simply cannot say that it plainly erred such that a new trial is warranted.

2.  Variance

Defendant argues that the Court's response to the supplemental jury instruction given during jury deliberations caused a prejudicial variance.  According to defendant, the indictment required that the government prove all three acts alleged in Count Eight because the word "and" appears before (c).  Thus, when the jury inquired as to whether the government had to prove all three acts or just one act, the Court erred in responding that only one act was required to support a conviction for witness tampering.  According to defendant, the variance violates due process

because the government did not prove Count Eight beyond a reasonable doubt.  In addition, defendant argues that the variance enabled the jury to return a general verdict and, as such, defendant's double jeopardy rights are impacted.

In response, the government argues that longstanding caselaw supports the proposition that the government is permitted to indict in the conjunctive, while courts are permitted to charge juries in the disjunctive.  According to the government, in order to prove the crime of witness tampering, the government needed to prove only one of the factual predicates contained in the indictment.  Thus, the Court did not err in its supplemental jury instruction.

"Generally speaking, a variance occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007).  "[O]nce the indictment presents a factual basis for an element of a crime, the prosecution may not rest its proof of that element of the crime at trial on other facts."  "To obtain reversal of a conviction because of a variance between the indictment and the evidence produced at trial, a defendant must satisfy a two-prong test: (1) the variance must be demonstrated and (2) the variance must affect some substantial right of the defendant." *Id*.

Upon review, the Court finds that defendant's argument is not well-taken.  As an initial matter, the Court notes that the abuse of discretion standard applies to the Court's supplemental jury instructions.  *See, United States v. Sanders*, 472 Fed.Appx. 376 (6th Cir. 2012)("We review a supplemental jury instruction for abuse of discretion to determine whether it fairly responds to the jury's inquiry without creating...prejudice.").  The government cites a wealth of caselaw consistently holding that when a statute denounces offenses disjunctively, the government can

16

charge a defendant in the conjunctive and the Court may nonetheless charge the jury in the disjunctive. *See, e.g., Griffin v. United States*, 502 U.S. 46 (1991)(conviction to defraud federal government upheld where indictment charged that defendant committed fraud against IRS and DEA, evidence was wholly lacking to support fraud against the DEA, and trial court charged jury in the disjunctive); *United States v. Pritchett*, 749 F.3d 417 (6th Cir. 2014)(conviction upheld where indictment charged defendant with distribution of pseudoephedrine and iodine, but court charged jury that it need only determine whether defendant distributed pseudoephedrine *or* iodine). Defendant argues that these cases are all distinguishable because they involve charging alternative means for satisfying a statutory element, whereas here, the indictment charged separate factual predicates. The Court finds, however, that in the context of determining a variance, it is a distinction without a difference.[4]  In the context of a variance, the theory is that the government did not prove the crime charged. The Court finds it to be irrelevant whether the government's proof fails because it conjunctively alleged different means or different factual predicates. Either way, the government fails to prove what it alleged in the indictment.

Here, the indictment plainly put defendant on notice of the facts that were charged against him. There is no suggestion that the government attempted to prove witness tampering through facts different than those contained in the indictment. As in *Pritchett*, defendant fails to point to any offense for which the defendant was convicted that was other than the one alleged in the indictment. Nor does defendant point to facts at trial that differed from those contained in

---

[4]     The Court perceives a difference in defendant's  "means" argument as it relates to duplicity. In the context of duplicity, defendant claims that (a), (b), and (c) are not alternative means because they are separate factual predicates and thus constitute separate offenses.

17

the indictment.  And, as in *Pritchett*, there is nothing to suggest that the supplemental jury instruction affected defendant's right to a fair trial.   Although defendant generally argues again that his double jeopardy rights are impacted by the jury instruction, the Court disagrees.  The indictment is clear and unambiguous, and defendant fails to establish why he would be unable to defend himself based on double jeopardy concerns if the government were to lodge future charges regarding (a), (b), or (c).

On the whole, defendant does not cite any case in which a court concluded that a variance occurred on similar facts.  Absent any law on point, the Court finds that it did not abuse its discretion in answering the jury's supplemental question.

3.  Jury instructions

Defendant objects to the "attempt" and "corruptly persuade" jury instructions given by this Court.  As an initial matter, the parties dispute the standard of review applicable to defendant's challenges to the jury instructions.  Defendant argues that he preserved his right to challenge the jury instructions by submitting objections in the defendants' joint trial brief.  In response, the government argues that, after charging the jury, the Court specifically inquired whether there were any objections to the jury instructions and defense counsel twice indicated on the record that there were no objections.  In addition, the government points out that submitting alternate instructions does not preserve the issue for appeal.

Federal Rule of Criminal Procedure 30(d) provides:

Objections to Instructions.  A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate.  An opportunity must be given to object out of the jury's hearing and, on request, out of the jury's presence. Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b).

18

Upon review, the Court finds that defendant's challenges to the jury instructions are subject to plain error review.  As set forth above, the Court's pretrial Order required the parties to submit a joint set of annotated instructions indicating the objections to each instruction.  The government submitted the document, in which the government indicates that only defendant Giorgio participated by providing comments.  The government incorporated those comments and objections into the joint set and the Court utilized this document as a starting point during the jury conference with the parties.  The Court did not unilaterally accept the government's proposed instructions.  To the contrary, many of the instructions, including the "corruptly" instruction, were altered by the Court.  Notably, the annotated instructions do not indicate any objection or alternate instruction with regard to "attempt."  Although the Court carefully reviewed the trial briefs, the Court specifically instructed the parties to provide an annotated set to assist the Court with addressing all issues with the jury instructions.  In fact, the Court specifically informed all parties that "No proposed jury instruction will be considered by the Court unless it has been submitted in compliance with these provisions."  (Doc. 22).  As is readily apparent from the annotated set, the government and co-defendant Georgio were able to reach an agreement on a number of issues related to the instructions.  (*See*, Doc. 152-1 at n.1).  Thus, the joint set became the Court's working document for all jury instruction issues.  The Court informed the parties that it would be using this document during the jury charge conference.[5]  At no point did defendant raise any issue with regard to attempt.  Moreover, the

---

[5]      Defendant claims that by using the annotated instructions submitted by the government as a starting point, the Court implicitly overruled defendant's objections.  Not so.  The Court used this document because that was the document the Court instructed that the parties jointly prepare.

19

Court provided all parties with a set of the jury instructions before charging the jury.  After charging the jury, the Court called the attorneys to sidebar and specifically inquired on the record whether there were any objections to the jury instructions.  Twice defense counsel responded that there were no objections.[6]  As such, the Court finds that defendant did not comply with Federal Rule of Criminal Procedure 30(d) and the plain error standard of review will apply.

"In the context of challenges to jury instructions, plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice."  *Untied States v. Morrison*, 594 F.3d 543, 546 (6th Cir. 2010)(internal quotations and citation omitted).  As set forth below, defendant fails to meet this standard.

A.  Attempt Instruction

This Court charged the jury as follows:

Section 1512(b)(1) of Title 18, United States Code, provides in part that: "Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to influence, delay, or prevent the testimony of any person in any -- in an official proceeding" shall be guilty of an offense against the United States. For you to find the defendant Benjamin Suarez guilty of the crime of witness tampering charged in Count 8 of the superseding indictment, the government must prove each of the following two elements beyond a reasonable doubt. First, that on or about the date charged, Benjamin Suarez knowingly intimidated, threatened, corruptly persuaded, or engaged in misleading conduct toward the person identified in the superseding indictment as a witness, or attempted to do so. And, second, that Benjamin Suarez did so intending to influence, delay, or prevent the testimony of that person in an official proceeding.

---

[6]     Defendant's citation to *Gradsky v. Sperry Rand Corp.*, 489 F.2d 502 (1973) is not on point.  In that case, the Sixth Circuit concluded that the plaintiff preserved his objections by submitting objections in writing.  In *Gradsky*, however, there is no indication that the plaintiff responded that there were "no objections" to the Court's jury charge.  Moreover, in this case, defendant did not comply with the Court's pretrial order regarding the submission of jury instructions.  Therefore, *Gradsky* does not assist defendant.

***

As I indicated, the first element may be satisfied if Benjamin Suarez actually used intimidation, threats, corrupt persuasion, or engaged in misleading conduct, or if he attempted to do so. A defendant may be found to have attempted to intimidate, threaten, corruptly persuade, or engage in misleading conduct if his conduct constituted a substantial step towards committing the crime. The act which constitutes a substantial step must corroborate the defendant's criminal purpose.

Defendant argues that the Court's instruction completely eliminated the *mens rea* requirement for attempt.  According to defendant, Sixth Circuit law requires that the Court charge the jury that "a defendant may be found to have attempted to intimidate, threaten, corruptly persuade, or engage in misleading conduct *if he intended to engage in criminal conduct* and he performed one or more overt acts which constitute a substantial step towards committing the crime."  *United States v. Williams*, 704 F.2d 315, 321 (6th Cir. 1983)(emphasis added in defendant's brief).  Defendant claims that the Court's instruction does not comport with *Williams*.  In response, the government argues that the defendant failed to take into account the totality of the Court's instruction.

Upon review, the Court rejects defendant's argument that, as a whole, the attempt instruction omitted any *mens rea* requirement.   As an initial matter, the Court instructed the jury that it must first find that defendant "*knowingly* intimidated, threatened, corruptly persuaded, or engaged in misleading conduct toward the person identified in the superseding indictment as a witness, or attempted to do so."  This language is consistent with the Sixth Circuit Pattern Jury Instructions with regard to "Attempt."  (*See,* Sixth Circuit Pattern Jury Instructions Criminal 5.01, "For you to find defendant guilty of this crime, you must be convinced that the government has proved both of the following elements beyond a reasonable doubt: (A) First, that the defendant intended to commit the crime of _____.  (B) And second, that the defendant did

21

some overt act that was a substantial step towards committing the crime of _____.")

Here, by using the word "knowingly,"  the Court specifically instructed the jury that it must first find that defendant intended to commit the crime of witness tampering.[7]  Neither the Sixth Circuit Pattern Jury Instructions, nor Sixth Circuit law, require the redundancy suggested by defendant.  This is especially so in light of the Court's further instruction with regard to Count Eight.  The Court continued with the instructions and indicated that, "the first element may be satisfied if defendant...actually used intimidation...or if he attempted to do so.  A defendant may be found to have attempted to intimidate, threaten, corruptly persuade, or engage in misleading conduct if his conduct constituted a substantial step towards committing the crime. *The act which constitutes a substantial step must corroborate the defendant's criminal purpose*."  (Emphasis added).  This language clearly sets forth that with regard to attempt, the "substantial step" must have been be "in line" with the defendant's *criminal purpose*.  Thus, the jury could not have concluded that defendant attempted to engage in witness intimidation without first concluding that the substantial step he took was taken to corroborate his criminal purpose.  The Court finds that this language comports with the requirement set forth in *Williams* that to be found guilty of attempt, the defendant must have intended to engage in criminal conduct.  As such, defendant fails to point to any error regardless of the applicable standard of review that would warrant a new trial.[8]  Having found no error, the Court need not address the evidence

---

[7]    Defendant in essence argues that the jury could have determined that defendant "negligently" attempted to "knowingly" intimidate. This conclusion is belied by a reading of the instruction as a whole.

[8]    The parties vigorously dispute what standard of review applies to the attempt instruction.  According to defendant, plain error review

22

relied on by defendant.[9]

B. Corruptly Persuade

Defendant argues that the Court's definition of corruptly persuade is erroneous in light of the Supreme Court's pronouncement in *Arthur Anderson LLP v. United States*, 544 U.S. 696 (2005). Defendant claims that the Court omitted the words "dishonestly" and "with the specific intent to subvert or undermine the due administration of justice." The government responds that a number of courts have used nearly the identical definition of "corruptly persuade" given by this Court. As such, it is an accurate statement of the law.

Upon review, the Court rejects defendant's argument. This Court charged the jury that "corruptly persuade" means to "to act knowingly with a wrongful, immoral or evil purpose to convince or induce another person to engage in certain conduct." In *Arthur Anderson*, the Supreme Court reversed the conviction of Arthur Anderson based on the trial court's definition of "corruptly persuade." The Court held as follows:

> The parties vigorously disputed how the jury would be instructed on "corruptly." The District Court based its instruction on the definition of that term found in the Fifth Circuit Pattern Jury Instruction for § 1503. This pattern instruction defined "corruptly" as

---

is not appropriate because he claims the Court failed to instruct the jury on an element of the offense. The Court need not reach this issue because the Court finds that the instructions given did not omit the *mens rea* requirement.

[9]    The Court further rejects defendant's argument that a variance occurred because the indictment charged defendant with attempt, but the jury instructions allowed the jury to convict defendant of attempted witness intimidation or, alternatively, the completed crime of witness intimidation. As the government points out, any error in this regard would inure to the *benefit* of the defendant as the completed crime required additional proof on the part of the government.

"knowingly and dishonestly, with the specific intent to subvert or undermine the integrity" of a proceeding.  The Government, however, insisted on excluding "dishonestly" and adding the term "impede" to the phrase "subvert or undermine."  The District Court agreed over petitioner's objections, and the jury was told to convict if it found petitioner intended to "subvert, undermine, or impede" governmental factfinding by suggesting to its employees that they enforce the document retention policy.

These changes were significant. No longer was any type of "dishonest[y]" necessary to a finding of guilt, and it was enough for petitioner to have simply "impede[d]" the Government's factfinding ability. As the Government conceded at oral argument, "[i]mpede" has broader connotations than "subvert" or even "[u]ndermine," and many of these connotations do not incorporate any "corrupt[ness]" at all. The dictionary defines "impede" as "to interfere with or get in the way of the progress of" or "hold up" or "detract from."  By definition, anyone who innocently persuades another to withhold information from the Government "get[s] in the way of the progress of" the Government. With regard to such innocent conduct, the "corruptly" instructions did no limiting work whatsoever.

*Arthur Anderson*, 544 U.S. 696 at 706-07.

Unlike the instruction at issue in *Arthur Anderson*, the "corruptly persuade" instruction given by this Court requires that the jury convict defendant only if persuasion was done "knowingly with a wrongful, immoral or evil purpose."  This phrase negates any "innocent" persuasion and thus does not violate *Arthur Anderson*.  The Court does not read *Arthur Anderson* as narrowly as defendant suggests and finds that the precise word "dishonest" is not required in order to properly define "corruptly persuade."  This conclusion comports with the decisions of other courts and the Modern Federal Jury Instructions. *See, e.g.*, *United States v. Matthews*, 505 F.3d 698, 705 (7th Cir. 2007)(use of phrase "wrongfully" satisfies *Arthur Anderson*);  Leonard B. Sand, *et al.*, Modern Federal Jury Instructions–Criminal Vol. 2, Instruction 46-31 (Lexis 2014)(to "corruptly persuade" means to "act knowingly with a wrongful, immoral, or evil purpose to convince or persuade another person to engage in certain conduct.")  *Cf. United States v. Black*, 239 Fed.Appx. 994 (6th Cir. September 04, 2007)(no error in omitting the word

"dishonestly" from the jury instructions where the evidence negated any innocent persuasion).

The Court further rejects defendant's argument that the Court erroneously omitted the phrase "with the specific intent to subvert or undermine the due administration of justice." Defendant wholly ignores the fact that the Court included a definition of "corruptly" that applied to all of the jury instructions.  The Court informed the jury that "to act 'corruptly' as that word is used in these jury instructions means to act voluntarily and deliberately and for the purpose of improperly influencing, or improperly obstructing, or improperly interfering with the administration of justice."  (Doc. 297 at 236).  The Court finds that this instruction comports with *Arthur Anderson*.  As such, defendant fails to satisfy the clear error standard.[10]

**<u>CONCLUSION</u>**

For the foregoing reasons, the Motion of Benjamin Suarez for a Judgment of Acquittal on Count 8 Or, in the Alternative, a New Trial on That Count (Doc. 288) is DENIED.

IT IS SO ORDERED.


  /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 10/8/14

---

[10]     Defendant notes that a statement by the prosecutor during closing arguments compounded the error.  Having concluded that no error occurred, the Court need not address the statement made by the prosecutor.