UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff-Respondent, | : | |
| v. | : | **No. 15-cv-_____** |
| | : | **No. 5:13-cr-00420-PAG-1** |
| BENJAMIN SUAREZ, | | |
| Defendant-Movant. | : | |

**Prisoner Number & Place of Confinement:**
Reg. No. 59502-060, FCI Gilmer, Satellite Camp
(Clerk of Court take note:  movant is represented by counsel)

## MOTION TO VACATE SENTENCE

**1.**     **(a) Name and location of court which entered the judgment of conviction you are challenging.**  United States District Court for the Northern District of Ohio, Eastern Division. Located in Cleveland, Ohio.

    **(b) Criminal docket or case number (if you know):** 5:13-cr-00420-PAG-1

**2.**     **(a) Date of judgment of conviction (if you know):**  Sentence imposed November 14, 2014; Judgment signed, filed and entered that same day.

    **(b) Date of sentencing:** November 14, 2014

**3.  Length of Sentence.**  15 months' incarceration, 2 years' supervised release, $15,000 fine, and $100 special assessment.

**4. Nature of crime (all counts)**  Count 8: witness tampering, in violation of 18 U.S.C. § 1512(b)(1).  The defendant was acquitted on the remaining nine counts.

**5.** **(a) What was your plea?**  Not guilty.

**(b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?**  Question not applicable.

**6. If you went to trial, what kind of trial did you have?**  Jury trial.

**7. Did you testify at a pretrial hearing, trial, or post-trial hearing?**  No.

**8. Did you appeal from the judgment of conviction?**  Yes

**9. If you did appeal, answer the following:**

**(a) Name of court:**  United States Court of Appeals for the Sixth Circuit.

**(b) Docket or case number (if you know):** 14-4192 & 14-4249

**(c) Result:**  Judgment affirmed

**(d) Date of result (if you know):** July 22, 2015; rehearing denied on September 3, 2015

**(e) Citation to the case (if you know):**  *United States v. Suarez,* 2015 WL 4478112 (6th Cir. July 22, 2015).

**(f) Grounds raised:**  The appeal raised the following two issues:

**1. The elimination of the intent element.** Does Mr. Suarez's objection to the "attempt" instruction preserve his claim that it erroneously eliminated the intent element? Does this error violate Mr. Suarez's right under the Due Process Clause to have the jury find each element of the offense beyond a reasonable doubt? Does this error require or warrant setting aside Mr. Suarez's conviction?

**2. The duplicity in Count 8.** Does Mr. Suarez's objection to the "any one" instruction and/or his request for polling preserve his claim that Count 8 is duplicitous? Given the duplicity in Count 8, does the verdict violate Mr. Suarez's right under the Double Jeopardy Clause to be free from a second prosecution for the same acts? Does this violation warrant reversing his conviction?

**(g) Did you file a petition for certiorari in the United States Supreme Court?**  No

If "Yes," answer the following:
**(1) Docket or case number (if you know):**

      **(2) Result:**
      **(3) Date of result (if you know):**
      **(4) Citation to the case (if you know):**
      **(5) Grounds raised:**

**10.  Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?**  No.

**11.  If your answer to 10 was "yes," give the following information:** Question not applicable.

**12.  For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.**

**GROUND ONE:**  The defendant was denied his Sixth Amendment right to the effective assistance of counsel at trial.

**(a) Supporting facts:**  Count Eight of the superseding indictment charged that Benjamin Suarez attempted to tamper with the testimony of Barbara Housos in three ways.  Count Eight, which identified Ms. Housos only by her initials, "B.H.," first charged that Mr. Suarez attempted to tamper with her testimony by sending her a one-page handwritten note to which was attached a five-page typewritten document which, according to the indictment, "contain[ed] an inaccurate version of events that SUAREZ wished [her] to present" in her upcoming testimony before a federal grand jury.  Doc. 27, p. 34 ¶ 99 (capitalization original).  The superseding indictment charged that the handwritten note also told her "not to communicate with her own lawyer."  *Id.*

Next, Count Eight charged that Mr. Suarez attempted to tamper with her testimony by "writing and circulating an inaccurate letter to the employees of SCI opining that [Ms. Housos's] mental abilities had been compromised, referencing medical issues experienced by [Ms. Housos], alleging that [Ms. Housos] was under federal investigation, and opining that [Ms. Housos] had suffered a tragic loss as a result of the investigation[.]"  *Id.*  "SCI" referred to Suarez Corporation Industries, Inc., the company that Mr. Suarez founded and owned.  SCI was also a co-defendant in this case.

Finally, Count Eight charged that Mr. Suarez attempted to tamper with Ms. Housos's testimony by telling Ms. Housos that her "mental abilities had been compromised."  *Id.*

Although Count Eight provided three methods by which Mr. Suarez allegedly attempted to tamper with Ms. Housos's jury testimony, the first was critical to the government's case.  Only Mr. Suarez's note to Ms. Housos (Gov't Ex. 501) referred to her upcoming grand jury or trial testimony and arguably sought to get Ms. Housos to testify before the grand jury or any subsequent trial along the lines of the five-page typewritten document attached to it.  Unless the jury found that the government had proved beyond a reasonable doubt that Mr. Suarez had sent that initial note in an attempt to tamper with Ms. Housos' testimony, it is highly unlikely that the jury would have made any connection between Ms. Housos' trial testimony and the second and third methods charged in Count Eight.  While Mr. Suarez's comments in the letter to SCI employees and then directly to Ms. Housos were inconsiderate of Ms. Housos and hurtful to her feelings, standing alone they provide

no obvious connection to her any of her testimony. It was therefore critical that defense counsel provide the jury with innocent explanations for what Mr. Suarez said in his handwritten note.

Mr. Suarez's handwritten note to Barbara Housos read in full:

> Barb,
>
> I want to spare you doing a grand jury testimony in your condition. I want to see if you can do an affidavit like Donna.
>
> Mike P. can draft it from the attached brief to the new attorneys.  Just look at your parts in the brief and tell me if it is accurate.  This brief is my memory of what happened. If accurate just write OK on it.  If you have corrections, make notes. Return to me in this envelope & give to Joe to bring back to me.
>
> Do not tell anyone about this. Also, the new attorneys said no one should admit to wrongdoing, even with a letter of immunity.  That's a lie. They will still prosecute you as a coconspirator.  Also, do not admit to anything you think might be wrongdoing to the attorneys.  They could turn you in. Your testimony is key to keeping Mike G. from getting indicted, which would take down SCI. Do not call me on this as our lines may be tapped.

Trial counsel focused the jury on the first part of the note, in which Mr. Suarez expresses his concern for Ms. Housos.  As the jury learned, not only was Ms. Housos suffering from colon cancer, but her son had recently committed suicide.  The jury also learned that Mr. Suarez and Ms. Housos had been friends for many years.  The first part of the note provides a clear non-criminal explanation for why Mr. Suarez wrote it.  He was concerned about his friend and wanted to help her avoid the stress of testifying before a grand jury.  He knew that his sister, Donna Blubaugh, who had also been suffering from a serious medical condition, had been able to avoid the stress of testifying before the grand jury by submitting an affidavit, and was suggesting that Ms. Housos might be able to work out a similar arrangement.  He wanted to make it easy for Ms. Housos, so he provided her with something that he thought might be the start of an affidavit she could use.  The handwritten note clearly stated that the five-page document was simply Mr. Suarez's "memory of what happened," and suggested that she "make notes" on it if she had any "corrections."  The implication of the note was that "Mike P." would draft a declaration that included her changes.

That is the way Barbara Housos interpreted the first part of the note.  In deposition, which was submitted as her testimony at trial, Mr. Housos testified:

> I really believe his intention on this letter was to help me, because he knew how damaged I was from a lot of personal problems.
>
> \*       \*       \*
>
> I know him. I really felt that he wanted to help me. He didn't want me to have to go before the grand jury. He wanted – he wanted to help me like he helped his sister.

Housos depo. 5/20/14 p. 244-245. Ms. Housos also testified that she "would not lie for [Mr. Suarez] and I don't expect – think he would expect me to." *Id.* 251. She also testified that if she disagreed anything in Mr. Suarez's five-page summary of what happened that she could make corrections. *Id.* 342.

Although Ms. Housos was hard-pressed to explain why, Housos depo. 5/21/14 pp. 154-55, she did not believe that Mr. Suarez had any intent other than to help her when he told her not to speak with her lawyer about the note. *Id.* 155. Although Ms. Housos did not believe Mr. Suarez was trying to improperly influence her testimony, Mr. Suarez's trial counsel was unable to provide the jury with any evidence from which they could find that there was an innocent explanation for why Mr. Suarez told Ms. Housos that the immunity she was being offered would not protect her from prosecution or why he told her not to discuss his note with her lawyer. This is the part of the letter on which the prosecution focused during closing arguments:

> And focus, if you would, on the bottom portion of the handwritten letter. … Read that. It says, "Do not tell anyone about this." The five-page memo, "Getting your story straight" attached here, the defendant's version of events, "Do not tell anyone about this. Also, the new attorneys said no one should … admit to any wrongdoing." I'm sorry.
>
> "The attorneys said that no one should admit to any wrongdoing even with a letter of immunity. That's a lie. They will still prosecute you as a co-conspirator. Also, do not admit to anything you think might be wrong to the attorneys. They could turn you in. Your testimony is key to keeping Mike G. from getting indicted, which would take down SCI. Do not call me on this as our lines may be tapped."

Trial Tr. 6/26/14 pp. 67-68. Later, in rebuttal summation, the prosecution also focused on this part of the letter:

> And she said that, she said she was frightened, she said that she was terrified, that that whole last paragraph terrified her because Mr. Suarez told her that she couldn't trust her own lawyer.
>
> He told her that her own lawyer was going to turn her in; that she couldn't trust the phones because the phone lines were tapped. And that if she testified, if she was truthful, she was going to get Mike Giorgio indicted and that was going to take down SCI.

Trial Tr. 6/26/14 p. 190. In his closing argument, Mr. Suarez's counsel was able to argue that Mr. Suarez was acting out of concern for his friend, that he hoped she would be able to avoid the stress of testifying before a grand jury by submitting an affidavit – the same way that Mr. Suarez's sister had, and that he was not dictating to her what to say since he told her she could make any changes to the draft he had prepared based on his own memory. *Id.* 100-102. But he was unable to offer any innocent explanation for the parts of the letter on which the prosecution focused: the part that told her not to trust her lawyer or to speak to him about Mr. Suarez's letter and the part that told her she could be prosecuted despite an immunity agreement. Had counsel been able to provide an innocent explanation for these seemingly damning words, there is a reasonable probability that the

jury would have had a reasonable doubt with respect to Count Eight and would have returned a verdict of not guilty.

The reason trial counsel were unable to provide the jury with such evidence was not that it did not exist—it was that they failed to conduct the investigation necessary to uncover that evidence.  Prior to trial, Mr. Suarez told his attorneys that he had written the second part of the note because he was afraid that Ms. Housos was not getting good advice from her lawyer, who at the time was Donald Scherzer.  At that time, SCI was paying Ms. Housos' lawyer fees.  Mr. Suarez knew that SCI was in the process of replacing Mr. Scherzer with Bradley Barbin and wanted her to wait until he replaced Mr. Scherzer before she spoke with her attorney.  He told his attorneys that he was not trying to prevent Ms. Housos from consulting with counsel concerning the letter he sent her—he only wanted her to wait until her new attorney, Bradley Bardin, was retained—something he knew would happen within days of his sending the letter.

Mr. Suarez told his trial counsel that the reason he thought attorney Scherzer was giving Ms. Housos bad advice concerning immunity is that just prior to sending the letter he learned from one or more of his prior attorneys that contrary to the advice Ms. Housos and others had been receiving from Mr. Scherzer, the immunity being offered by the prosecution would not necessarily mean that they could never be prosecuted.  At that time, Mr. Suarez was not being represented by the attorneys who ultimately represented him at trial.  Mr. Suarez told his trial attorneys that just prior to his sending the letter to Ms. Housos, he had been part of a conference which included attorneys Michael Puterbaugh (who at the time was in-house counsel for SCI), Michael Crites, Richard Kerger, and Donald Santarelli.  Mr. Suarez told his trial attorneys that during that conference, one of the attorneys had said that, contrary to what Mr. Scherzer had been advising his clients, the immunity offered by the government did not sufficiently protect them from prosecution, and that they could be prosecuted in spite of that immunity.  That attorney was no doubt referring to the direct "use immunity" typically offered by the government in criminal cases by way of a letter. While the direct "use" immunity typically offered by the government protects a person from having her own words used against her, it does not prevent the government from prosecuting her based on other evidence – even evidence the government discovered as a result of something she told them. While Mr. Suarez did not understand the details of why the immunity offered Ms. Housos was not sufficient, he understood that it would not provide her with adequate protection, and was afraid that if she continued to follow Mr. Scherzer's advice, she risked being prosecuted.  Mr. Suarez was so afraid that this might happen to his friend that he included the second part of the letter in hopes of protecting her until she was able to consult with Mr. Barbin.

Mr. Suarez's explanation was also in one of the government's trial exhibits in which Mr. Suarez had claimed that:

> [w]hen new attorneys Santarelli and Crites were added to the legal team in July of 2012, Santarelli told Suarez and Puterbaugh in conference calls and in meetings that the attorney for the employee donors, Don Scherzer, was giving bad legal advice. They said that Scherzer should never have had some of his clients self-incriminate with partial immunity by saying they thought they would be reimbursed for their donations. Santarelli said that donors could later be charged with conspiracy.

-6-

Gov't Ex. 504, third bullet point.  Since Exhibit 504 was available to counsel prior to and during trial, it should have alerted them to the need to investigate this claim and cross examine attorney Puterbaugh concerning it.

Although trial counsel spoke with Mr. Puterbaugh prior to trial, they did not ask him about the conference Mr. Suarez recalled him being at.  Had they done so, Mr. Puterbaugh would have told them not only that he remembered one of the attorneys at that meeting commenting on the inadequacy of the immunity offered by the government, but that Mr. Suarez sent his note to Ms. Housos hours after that conference.  Trial counsel could then have cross-examined Mr. Puterbaugh about that at trial since he testified as a government witness.  Trial counsel could also have spoken with the other attorneys who had been on the phone or in-person meeting at with the inadequacy of the government-offered immunity was discussed.  These attorneys could also have confirmed Mr. Suarez's account.  These attorneys have confirmed to Mr. Suarez's current attorneys the accuracy of Mr. Suarez's account.  These attorneys could have provided the evidence trial counsel needed to provide an innocent explanation for the second part of the letter. Once the jury had heard that explanation, there is a reasonable probability that they would have believed it since, among other things, the evidence showed that Ms. Housos ultimately waited until she received total statutory immunity on October 26, 2012 (months *after* Mr. Suarez's sent his handwritten note at the end of July or early August of that year), Housos Depo. 5/19/14 at 4-6, before testifying before the grand jury—confirming Mrs. Suarez's fear that the immunity the government had initially offered her had, in fact, been inadequate.

For these reasons, had trial counsel conducted the necessary investigation prior to trial and then cross examined Mr. Puterbaugh concerning the previously-discussed conference, or other knowledgeable witnesses, there is a reasonable probability that the jury would have returned a verdict of not-guilty on Count Eight.

**(b) Direct Appeal of Ground One:**

**(1) If you appealed from the judgment of conviction, did you raise this issue?**

No.

**(2) If you did not raise this issue in your direct appeal, explain why:**
**(c) Post-Conviction Proceedings:**  Ineffective assistance claims are most appropriately raised for the first time in a motion filed pursuant to 28 U.S.C. § 2255, and need not be raised on appeal.  See *Massaro v. United States,* 538 U.S. 50 (2003).

**(1) Did you raise this issue in any post-conviction motion, petition, or application?**

No.

**(2) If your answer to Question (c)(1) is "Yes," state:**  Question not applicable.

**(3) Did you receive a hearing on your motion, petition, or application?**  Question not applicable.

**(4) Did you appeal from the denial of your motion, petition, or application?**  Question not applicable**.**

**(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?**

Question not applicable.

**(6) If your answer to Question (c)(4) is "Yes," state:**  Question not applicable.

**(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:**  Question not applicable.

**13.  Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:**  This motion raises only one ground – ineffective assistance of counsel at trial.  Ineffective assistance claims are most appropriately raised for the first time in a motion filed pursuant to 28 U.S.C. § 2255, and need not be raised on appeal.  See *Massaro v. United States,* 538 U.S. 50 (2003).

**14.  Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?**  No.
.
**If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.**  Question not applicable.

**15.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:**

**(a)  At preliminary hearing:**  Question not applicable.  No preliminary hearing.

**(b)  At arraignment and plea:**  Brian Pierce, Esq. Gorman, Malarcik, Pierce, Vuillemin & LoCascio, 400 Gothic Bldg., 54 East Mill Street, Akron, OH 44308

**(c)  At trial:**  Brian Pierce, Esq. Gorman, Malarcik, Pierce, Vuillemin & LoCascio, 400 Gothic Bldg., 54 East Mill Street, Akron, OH 44308; and Mark E. Schamel, Esq., and Joshua D. Greenberg, Esq., Womble, Carlyle, Sandridge & Rice, 1200 19th Street, NW, Suite 500, Washington, DC 20036

**(d)  At sentencing:**  Brian Pierce, Esq. Gorman, Malarcik, Pierce, Vuillemin & LoCascio, 400 Gothic Bldg., 54 East Mill Street, Akron, OH 44308**;** and Mark E. Schamel, Esq., Womble, Carlyle, Sandridge & Rice, 1200 19th Street, NW, Suite 500, Washington, DC 20036

**(e)  On appeal:**  Brian Pierce, Esq. Gorman, Malarcik, Pierce, Vuillemin & LoCascio, 400 Gothic Bldg., 54 East Mill Street, Akron, OH 44308**;** and Mark E. Schamel, Esq., and Joshua D. Greenberg, Esq., Womble, Carlyle, Sandridge & Rice, 1200 19th Street, NW, Suite 500, Wash-

-9-

ington, DC 20036; and Nicole D. Milos, Esq., Cremer, Spina, Shaughnessy, Jansen & Siegert, One N. Franklin St., 10th Flr., Chicago, IL 60606.

**(f)  In any post-conviction proceeding:**  Not applicable.

**(g)  On appeal from any ruling against you in a post-conviction proceeding:**  Not applicable.

**16.  Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?**  No.

**17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?**  No.

**18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.**  Judgment of conviction has not yet become final since the defendant has 90 days from September 3, 2015 (the date the Court of Appeals denied rehearing *en banc*), *i.e.,* until Wednesday, December, 2, 2015, to petition the Supreme Court for a writ of certiorari.

Therefore, movant asks that the Court grant the following relief:

a. Direct that an Answer be filed pursuant to Fed.R.Gov. § 2255 P. 4(b); and then, after hearing,

b. Vacate the defendant's sentence and resentence him,

c. Or any other relief to which movant may be entitled.

                      Respectfully submitted,
                      GOLD & PYLE, L.P.A.

Dated: September 25, 2015

By:    /s/*John S. Pyle*
        GERALD S. GOLD

LAW OFFICES OF ALAN ELLIS
        JOHN S. PYLE
        720 Leader Building

By:    /s/*Alan Ellis*                526 Superior Ave., East
    ALAN ELLIS                       Cleveland, OH 44114-1498
    40 Via Hermosa                goldjero@aol.com
    Greenbrae, CA 94904        jpyle@gp-lpa.com
     AELaw1@alanellis.com      (216) 225-5075
     (415) 565-8617                (216) 619-9006 - FAX
     (415) 524-8352 – FAX

    JAMES H. FELDMAN, JR.
    50 Rittenhouse Place
    Ardmore, PA  19003
     jfeldman@jameshfeldman.com
     (610) 649-8200
     (610) 649-8362 - FAX

<u>Attorneys for the Defendant-Movant</u>